**B. G. M. ENTERPRISES, d/b/a Park Place Nursing Home and Rehabilitation Center, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary, Department of Health, Education and Welfare, and Montana Foundation for Medical Care, Defendants.**

No. CV–79–6–GF.

United States District Court,
D. Montana,
Great Falls Division.

Jan. 11, 1980.

Dennis E. Lind, Datsopoulos & MacDonald, Missoula, Mont., for plaintiff.

Jerome T. Loendorf, Helena, Mont., for Montana Foundation for Medical Care.

Robert T. O'Leary, U. S. Atty., Butte, Mont., for defendants.

## MEMORANDUM

HATFIELD, District Judge.

Plaintiff, B. G. M. Enterprises, d/b/a Park Place Nursing Home and Rehabilitation Center ("Nursing Home"), brings this action under Titles XI and XIX of the Social Security Act, 42 U.S.C. §§ 1301 *et seq.* and 42 U.S.C. §§ 1396 *et seq.*, alleging that

its constitutional rights to due process and equal protection were violated when defendants discontinued using the Nursing Home as a designated Medicare-Medicaid review authority. Jurisdiction vests in this court pursuant to 28 U.S.C. § 1331(a).

Defendants have moved to dismiss plaintiff's claims, plaintiff has responded thereto, and the matter is ripe for disposition.

Plaintiff is a licensed long-term care skilled nursing facility participating in Medicare and Medicaid programs, with its principal place of business in Great Falls, Montana.

Defendant Harris[1] is Secretary of the Department of Health, Education and Welfare ("HEW"), the federal agency responsible for the administration of the Social Security Act. Defendant Montana Foundation for Medical Care ("MFMC") is the entity designated by HEW as the Professional Standard Review Organization ("PSRO") for Montana. A PSRO, under the Social Security Act (the "Act"), ordinarily is a nonprofit professional association composed of physicians licensed to practice within the PSRO area, whose membership includes a substantial proportion of all physicians in that area. 42 U.S.C. § 1320c–1(b). A PSRO has the duty to review the professional health care services and items provided within its area by physicians and health care facilities to insure compliance with Act requirements. The PSRO may delegate review functions to statutorily designated health care facilities.

In the course of its review, the PSRO must determine whether:

(A) such services and items are or were medically necessary;

(B) the quality of such services meets professionally recognized standards of health care; and

(C) in case such services and items are proposed to be provided in a hospital or other health care facility on an inpatient basis, such services and items could, con-

sistent with the provision of appropriate medical care, be effectively provided on an outpatient basis or more economically in an inpatient health care facility of a different type.

42 U.S.C. § 1320c–4(a)(1).

A physician who is a member of the PSRO may not review a patient's health care services for which he was directly responsible, nor may he review services provided in or by an institution in which he or his family has a significant financial interest. 42 U.S.C. § 1320c–4(a)(6). If a PSRO reviews a health care service or item and disapproves it, payment may not be made for that service or item under the Social Security Act. 42 U.S.C.A. § 1320c–7(a). The Act imposes upon health care practitioners and facilities the obligation to assure that services and items for which payment is made under the Act:

(A) will be provided only when, and to the extent, medically necessary; and

(B) will be of a quality which meets professionally recognized standards of health care; and

(C) will be supported by evidence of such medical necessity and quality in such form and fashion and at such time as may reasonably be required by the Professional Standards Review Organization in the exercise of its duties and responsibilities

. . . .

42 U.S.C.A. § 1320c–9(a)(1). If the PSRO reports—and the Secretary agrees—that a practitioner or facility has demonstrated an unwillingness or an inability to comply with these obligations, the Secretary may exclude that practitioner or facility from receiving payments under the Social Security Act, or he may require repayment of the wrongful payments made to the practitioner or facility. 42 U.S.C.A. § 1320c–9(b).

The Secretary of HEW must reimburse the PSRO for all expenses which the PSRO "reasonably and necessarily" incurs in performing its review duties and functions. 42 U.S.C. § 1320c–4(f)(2).

---

1. An original defendant in this action, Joseph A. Califano, Jr., was Secretary of Health, Education and Welfare at the time plaintiff filed its complaint. Patricia Roberts Harris succeeded Califano in office during the pendency of this suit and is substituted for him as a party defendant. *See,* Rule 25(d)(1), F.R.Civ.P.

The provision at issue in this litigation is 42 U.S.C. § 1320c–4(e)(1). Prior to 1977, that provision read as follows:

Each Professional Standards Review Organization shall utilize the services of, and accept the findings of, the review committees of a hospital or other operating health care facility or organization located in the area served by such organization, but only when and only to the extent and only for such time that such committees in such hospital or other operating health care facility or organization have demonstrated to the satisfaction of such organization their capacity effectively and in timely fashion to review activities in such hospital or other operating health care facility or organization (including the medical necessity of admissions, types and extent of services ordered, and lengths of stay) so as to aid in accomplishing the purposes and responsibilities described in subsection (a)(1), except where the Secretary disapproves, for good cause, such acceptance.

The PSRO under this provision could and did delegate review functions to plaintiff, an independent skilled nursing facility which is not part of a hospital.

In October of 1977, Congress enacted Public Law 95–142, which made several amendments to the Social Security Act. Section 5(d)(3)(A) of that statute provided:

Section 1155(e) (1) of such Act is amended by striking out "of a hospital or other operating health care facility or organization" and inserting in lieu thereof "of a hospital (including any skilled nursing facility, as defined in section 1861(j), or intermediate care facility, as defined in section 1905(c), which is also a part of such hospital) or other operating health care facility or organization (other than such a skilled nursing facility or intermediate care facility which is not a part of a hospital)".

Thus, the amendments made by Public Law 95–142 prohibit a PSRO from delegating its review responsibilities to a review committee of a skilled nursing facility or an intermediate care facility, unless such facility is a part of a hospital to which review responsibility has been delegated by the PSRO.

The amendments therefore preclude the PSRO from granting further review authority to plaintiff, a skilled nursing facility "which is not part of a hospital." Defendant MFMC terminated plaintiff's delegated authority in July, 1978.

Plaintiff claims that it is still qualified to conduct Medicare-Medicaid review, and that the amendments to 42 U.S.C. § 1320c–4(e)(1), which preclude the PSRO from delegating review authority to plaintiff and all other nursing facilities which are not part of hospitals, have unconstitutionally deprived plaintiff of due process and the equal protection of the law.

 Defendant Harris claims initially that plaintiff's prayer for relief is barred by the doctrine of sovereign immunity. Plaintiff, in its amended complaint, asks for an order directing defendant Secretary of HEW "to promulgate regulations allowing continued delegated review authority for those skilled care facilities given such authority prior to the amendment of 42 U.S. C.A. §§ 1301 *et seq.*" A requested remedy is precluded by principles of sovereign immunity when "the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign . . . ." *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 691 n.11, 69 S.Ct. 1457, 1462 n.11, 93 L.Ed. 1628 (1949). Plaintiff's request that this court order the Secretary of a government agency to promulgate regulations favorable to plaintiff's interests is such a request to "require affirmative action by the sovereign" which is barred by sovereign immunity. *Congress of Racial Equality v. Commissioner, Social Security Administration*, 270 F.Supp. 537, 541 (D.Md. 1967). Absent any showing by plaintiff that the government has consented to liability for suits requesting such relief, plaintiff's claim for relief that defendant Harris be required to promulgate regulations is barred by principles of sovereign immunity and will be dismissed.

Plaintiff, however, also seeks declaratory relief from which the governmental defendant is not insulated from suit under the sovereign immunity doctrine. See, *Tennessee Power Co. v. Tennessee Valley Authority*, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939). Plaintiff first asks this court to declare that the amendments to 42 U.S.C. §§ 1301 *et seq.*, do not preclude the PSRO from delegating review authority to plaintiff.

The express language of 42 U.S.C. § 1320c–4(e)(1), as amended, however, clearly precludes a PSRO such as defendant Montana Foundation for Medical Care from delegating review authority to any "skilled nursing facility or intermediate care facility which is not part of a hospital". Plaintiff, a free-standing skilled nursing facility, is not part of a hospital and therefore may not be delegated review authority. The amended statute contains no grandfather clause for free-standing skilled nursing facilities which previously had been delegated review authority, and plaintiff has pointed to nothing in the legislative history of the Act to indicate that Congress intended to create such an exception. This court will not rewrite the statute to create a grandfather clause which would exempt plaintiff from the provisions of 42 U.S.C. § 1320c–

4(e)(1) when Congress has not seen fit to include such an exception.

Plaintiff alternatively claims that the 42 U.S.C. § 1320c–4(e)(1) amendment's exclusion of free-standing nursing homes from being designated as Medicare-Medicaid review authorities deprives it of due process and equal protection of the laws.

## I. DUE PROCESS

### a. *Liberty Interest*

It is axiomatic that "[t]he applicability of the constitutional guarantee of procedural due process depends in the first instance on the presence of a legitimate 'property' or 'liberty' interest within the meaning of the Fifth or Fourteenth Amendment." *Arnett v. Kennedy*, 416 U.S. 134, 164, 94 S.Ct. 1633, 1649, 40 L.Ed.2d 15 (1974) (Powell, J., concurring); *Moore v. Johnson*, 582 F.2d 1228, 1233 (9th Cir. 1978).

Plaintiff's claim that the amendment to 42 U.S.C. § 1320c–4(e)(1) deprived it of liberty without due process of law must fail because the interest which plaintiff claims is not a protected liberty interest.[2]

Plaintiff asserts that the 42 U.S.C. § 1320c–4(e)(1) exclusion of free-standing nursing homes from being delegated Medi-

---

**2.** Defendant claims initially that it is doubtful that a corporate entity such as plaintiff can claim a liberty interest under the Due Process Clause. There is support for defendant's position in two turn-of-the-century Supreme Court cases. "[T]he liberty guaranteed by the Fourteenth Amendment against deprivation without due process of law is the liberty of natural, not artificial, persons." *Western Turf Assoc. v. Greenberg*, 204 U.S. 359, 363, 27 S.Ct. 384, 386, 51 L.Ed. 520 (1907); *Northwestern Life Ins. Co. v. Riggs*, 203 U.S. 243, 255, 27 S.Ct. 126, 51 L.Ed. 168 (1906). See also, *Pierce v. Society of Sisters*, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Oney v. Oklahoma City*, 120 F.2d 861, 864 (10th Cir. 1941).

The Court, however, has not rigidly applied this rule in later years, implicitly finding in several cases that corporations had a liberty of contract which was protected by the Due Process Clause. *See, e. g., Advance-Rumely Thresher Co. v. Jackson*, 287 U.S. 283, 288, 53 S.Ct. 133, 77 L.Ed. 306 (1932). Where the issue was whether the Fourteenth Amendment applied to

a corporation which claimed that a state law abridged its liberty of the press, the court held that " . . . a corporation is a 'person' within the meaning of the equal protection and due process of law clauses . . . ." *Grosjean v. American Press Co.*, 297 U.S. 233, 244, 56 S.Ct. 444, 447, 80 L.Ed. 660 (1936). In its opinion in *Grosjean*, the Court mentioned neither *Northwestern Life* nor *Western Turf*.

In an attempt to reconcile the authorities, one court has noted that in most, but not all, of the later cases in which a corporation was found to have standing to sue for deprivation of a liberty interest, the liberty interest "claimed to have been impinged is one which an inanimate corporation could possess and does not affect human emotions or sensitivities." *D.D.B. Realty Corp. v. Merrill*, 232 F.Supp. 629, 637 (D.Vt. 1974).

In this case, plaintiff claims a loss of government employment accompanied by a stigma to its business or professional reputation, a loss and a stigma which either an individual or a business could suffer.

care-Medicaid review authority imposes upon it a stigma and damages its reputation in the community. Plaintiff relies upon *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) as authority for its claim that the alleged damage to its reputation infringes a liberty interest protected by the due process clause. Even if the liberty interest of the individual in his reputation as discussed in *Roth*, were to be extended to a business entity such as plaintiff, there would still be no implication of a liberty interest of plaintiff in this case. Although the amendments to 42 U.S.C. § 1320c–4(e)(1) preclude the PSRO from delegating review functions to plaintiff, they in no way prohibit plaintiff from conducting its normal business of caring for patients in a nursing home. Here, as in *Roth*, "there is no suggestion that the State [United States], in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Roth, supra*, 408 U.S. at 573, 92 S.Ct. at 2707; *see also, Gray v. Union County Intermediate Education District*, 520 F.2d 803, 806 (9th Cir. 1975).

The Ninth Circuit Court of Appeals has concluded that " . . . *Roth's* notion of liberty, while imprecise, distinguishes between a stigma of moral turpitude, which infringes the liberty interest, and a charge of incompetence . . . which does not. . . . " *Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 365–366 (9th Cir. 1976) (citations omitted). There is no allegation either in the language of the statute, its legislative history or even in plaintiff's brief that free-standing nursing homes are no longer eligible to conduct government Medicare-Medicaid review because of a charge of industry-wide moral turpitude. The legislative history of 42 U.S.C. § 1320c–4(e)(1), rather, indicates that the statute reflects the concern of Congress that free-standing nursing homes in general have less expertise than hospitals in conducting Medicare-Medicaid reviews. *See*, S.Rep.No.95–453, 95th Cong., 1st Sess. 21; H.R.Rep.No. 95–393 (Part II), 95th Cong., 1st Sess. 61, republished in 1977 U.S.Code Cong. & Ad-

min.News, pp. 3039, 3064. This conclusion at most amounts to a determination of incompetence to conduct the reviews which does not implicate a liberty interest. *Stretten, supra*.

◼ Plaintiff also asserts that the right to manage its business in the most efficient manner possible is a liberty right. By disqualifying free-standing nursing homes from conducting HEW Medicare-Medicaid reviews, plaintiff claims that Congress has caused plaintiff's nursing home business to be less efficient and thereby deprived it of a liberty interest. Whether plaintiff could run its business more efficiently or at a higher profit under the old law than it can under the new law, however, is not a due process, liberty issue. " . . . [T]he liberty of the citizen does not include among its incidents any vested right to have the rules of law remain unchanged for his benefit." *Middleton v. Texas Power & Light Co.*, 249 U.S. 152, 163, 39 S.Ct. 227, 231, 63 L.Ed. 527 (1919).

b. *Property Interest*

◼ Plaintiff also claims that its previous selection as an HEW delegated review authority is a property interest protected by the due process clause of the Fifth Amendment. To deprive plaintiff of this asserted property right of continued review authority without providing it a hearing as to its continued qualifications to conduct Medicare-Medicaid reviews, plaintiff asserts, is a denial of due process.

The Supreme Court has explained the circumstances under which a plaintiff's interest in continued employment at a government job constitutes a "property" interest protected by procedural due process. . . . To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . .

Property interests, of course, are not created by the Constitution. Rather,

they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709.

In this case, as in *Roth,* plaintiff can claim no legitimate property interest in continued government employment. Neither the terms of plaintiff's appointment, the language of 42 U.S.C. § 1320c–4(e)(1) in particular, nor the policy of the Social Security Act in general secured plaintiff's interest in continued delegation of Medicare-Medicaid review authority or created a legitimate claim to continued delegation which would give rise to a property right within the meaning of the Due Process Clause.

First, the terms of plaintiff's appointment as a Medicare-Medicaid review authority did not vest plaintiff with a legitimate expectation that it would continue to receive PSRO delegated review authority indefinitely into the future. Nowhere in its complaint or brief does plaintiff allege that its agreement with the PSRO was that plaintiff was to have permanent PSRO-delegated review authority. Rather, plaintiff alleges that its agreement with the PSRO designated plaintiff as a "pilot designation project."

Second, the language of 42 U.S.C. § 1320c–4(e)(1), as in effect when the PSRO initially delegated Medicare-Medicaid review authority to plaintiff, does not support plaintiff's claim of entitlement to continued review authority. Rather than making the review authority delegation a permanent one or conditioning retraction of such authority upon a hearing or showing of cause, the statute expressly made the appropriateness of continuing delegation of review authority to plaintiff a matter entrusted to the exclusive discretion of the PSRO. The PSRO, under 42 U.S.C. § 1320c–4(e)(1), prior to the law's amendment by P.L. 95–142, was bound to utilize the services of organizations, such as plaintiff, to which it delegated review authority " . . . only when and only to the extent and only for such time that such . . . organization (has) demonstrated to the satisfaction of such (PSRO its) capacity effectively and in timely fashion to review. . . ."

Under the law in effect when the PSRO delegated review authority to plaintiff, the PSRO could terminate plaintiff's review authority without providing plaintiff a pretermination hearing. The ambits of plaintiff's tenure as a review authority were thus determined solely by the degree to which plaintiff's performance proved satisfactory to the PSRO. By the terms of the statute, therefore, plaintiff held its position as a delegated review authority at the will of the PSRO. Such an "at will" appointment does not give rise to a property interest under the Due Process Clause. *See, Bishop v. Wood,* 426 U.S. 341, 344–347, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

Finally, and of overriding and controlling importance, plaintiff cannot make a credible claim that the Social Security Act as a whole created an implied contract or gave plaintiff a legitimate expectation that its original delegation of review authority would continue indefinitely. Indeed, the entire structure and purpose of the Act placed or should have placed plaintiff on notice that it had no property right in its position as a review authority. 42 U.S.C. § 1320c–4(e)(1), the provision of the Act granting plaintiff eligibility as a review authority, was subject to amendment or repeal at such time as Congress deemed advisable.

In discussing the interests of employees covered under the Act, the Supreme Court has noted that

To engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to ever-changing conditions which it demands. It was doubtless out of an awareness of the need for such flexibility that Congress included in the original Act, and has since retained, a clause expressly reserv-

ing to it '[t]he right to alter, amend, or repeal any provision' of the Act. § 1104, 49 Stat. 648, 42 U.S.C. § 1304. (citation omitted)

*Flemming v. Nestor,* 363 U.S. 603, 610–11, 80 S.Ct. 1367, 1372–73, 4 L.Ed.2d 1435 (1960).

Given this clear and long-standing interpretation of the Act by the Supreme Court, this court can find no reasonable basis for plaintiff to claim that there was a mutual understanding, express or implied, among the parties that the statutory authority to delegate review authority to free-standing nursing homes such as plaintiff would not be abrogated by subsequent legislation. Applicable to this case is the reasoning used by another court in denying the constitutional claim of a physician who asserted that a decision by the Secretary of HEW denying the doctor future reimbursement for his medical services under Part B of the Medicare program deprived him of property without due process of law.

The Government has not promised, explicitly or implicitly, that the program under Part B, will continue. . . . The mere fact that, at the start of Medicare, Dr. Cervoni was paid under Part B did not create a valid expectation that he could continue to be reimbursed under Part B. Since reimbursement through Part B was a creature of the Medicare statute and regulations, the regulations and interpretations of them could be expected to be modified by Congress or by HEW.

*Cervoni v. Secretary of Health, Education & Welfare,* 581 F.2d 1010, 1018 (1st Cir. 1978).

Like the Part B reimbursement to doctors in *Cervoni,* free-standing nursing home eligibility for delegation of Medicare-Medicaid review authority was a creation of the Medicare law which "could be expected to be modified by Congress or by HEW." *Id. See also, Mid Atlantic Nephrology Center, Ltd. v. Califano,* 433 F.Supp. 23, 37 (D.Md. 1977); *Price v. Folsom,* 168 F.Supp. 392, 398 (D.N.J.1958), *aff'd,* 280 F.2d 956 (3d Cir. 1960), *cert. denied,* 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695 (1961).

Whatever subjective expectation plaintiff entertained that its delegated review authority would continue, such was not a property right protected by the due process clause of the Fifth Amendment.

### c. *Irrebuttable Presumption*

█ Plaintiff asserts that *Berger v. Board of Psychologist Examiners,* 172 U.S. App.D.C. 396, 521 F.2d 1056 (D.C.Cir.1975), is authority for its contention that 42 U.S.C. § 1320c–4(e)(1), as amended, unconstitutionally denies it an individualized hearing to determine its continued qualifications to conduct Medicare-Medicaid reviews. The court in *Berger* struck down as violative of the due process clause an act of Congress which required that all psychologists practicing in the District of Columbia be licensed, and which specified that licenses be issued only to applicants with enumerated academic credentials. Although appellant Berger had practiced psychology in the District for about 14 years and had given lectures and published writings on the field of psychology, he was nonetheless precluded under the new law from practicing psychology in the District due to his lack of the specified academic credentials. The court held that the Act's irrebuttable presumption that only those with the requisite psychology degrees were qualified to practice psychology unconstitutionally denied both the appellant and all others without academic degrees who had practiced psychology in the District before passage of the Act the opportunity to demonstrate their professional skills. *Berger, supra,* 172 U.S. App.D.C. at 403, 521 F.2d at 1063.

Plaintiff contends that it too should be accorded the right to an individualized hearing on its continued qualifications to conduct Medicare-Medicaid reviews. Plaintiff asserts that whatever may be the validity of the presumption created by 42 U.S.C. § 1320c–4(e)(1), as amended, that free-standing nursing homes as a group are not as well qualified as hospitals in conducting the reviews, it nonetheless is entitled to the same grandfather clause as recognized in *Berger* to prove in an individualized hearing

that it is qualified to conduct the reviews. Without discussing the import of the obvious distinctions between the facts of this case and those of *Berger*,[3] this court notes that *Berger* is a case in which the court invalidated a Congressional Act under the "irrebuttable presumption" doctrine set forth in *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). *See, Berger, supra*, 172 U.S.App.D.C. at 402–404, 521 F.2d at 1062–1064. The doctrine, as will be shown, is not applicable here.

The Supreme Court in *Vlandis* and other cases declared that certain statutes which created irrebuttable presumptions that various groups of people were not eligible or qualified for certain government jobs or benefits unconstitutionally deprived members of those groups of their due process rights to individualized determinations of their eligibility or qualifications. *See, e. g., Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (statute creating an irrebuttable presumption of nonresidence of students held violative of the Due Process Clause); *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (school boards' rules requiring all pregnant teachers to take unpaid maternity leave five months before expected date of childbirth held violative of the Due Process Clause); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (statute creating an irrebuttable presumption that unwed fathers are not fit parents held violative of the Due Process Clause).

The irrebuttable presumption doctrine of the above cases, however, is not applicable

to the amendments of 42 U.S.C. § 1320c–4(e)(1) which preclude all free-standing nursing homes from being delegated PSRO Medicare-Medicaid review authority. Various members of the court have criticized the irrebuttable presumption doctrine as equal protection in disguise and as an assault on the fundamental prerogative of the legislature to legislate by classification. *See, LaFleur, supra*, 414 U.S. at 660, 94 S.Ct. 791 (Rehnquist, J. dissenting), and at 652, 94 S.Ct. 791 (Powell, J. concurring); *Vlandis, supra*, 412 U.S. at 462, 93 S.Ct. 2230 (Burger, C. J. dissenting). Justice Rehnquist characterized the conclusive presumption rationale of *Vlandis* as "in the last analysis nothing less than an attack on the very notion of lawmaking itself." *LaFleur, supra*, 414 U.S. at 660, 94 S.Ct. at 806 (Rehnquist, J. dissenting).

In *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), Justice Rehnquist wrote the majority opinion in which the court refused to extend the irrebuttable presumption analysis of *Vlandis, LaFleur* and *Stanley*. The court in *Salfi* declined the invitation to invalidate as violative of the Due Process Clause a provision of the Social Security Act that excluded surviving wives and stepchildren of a deceased wage-earner from receiving benefits if their respective relationships to the deceased had been for less than nine months prior to his death. The court reversed a three-judge district court which had held that Mrs. Salfi was entitled to an individualized hearing to prove that hers was not a sham marriage entered into less than nine months before her husband's death merely

---

**3.** First, the interests which the appellant in *Berger* sought to protect are markedly different from the asserted interests of plaintiff in this case. *Berger*, an individual who had practiced psychology in the District of Columbia for 14 years prior to enactment of the law, was precluded by the Act from practicing his chosen occupation in the District. Plaintiff, by contrast, is precluded by 42 U.S.C. § 1320c–4(e)(1) merely from being delegated PSRO review authority and not from conducting its nursing home business in Montana.

Second, the court in *Berger* noted that "[a]lthough the Supreme Court has stated that administrative efficiency alone does not justify

violations of procedural due process through the use of unjustifiable presumptions, efficiency must always be a consideration." *Berger, supra*, 172 U.S.App.D.C. at 404, 521 F.2d at 1064. The act of Congress under attack in *Berger* regulated the psychologist profession only in the District of Columbia. 42 U.S.C. § 1320c–4(e)(1), by contrast, sets rules for delegation of PSRO review authority not merely in Montana but nationwide. The administrative problems of conducting individualized hearings nationwide might be far more burdensome than the problems created when hearings are confined to a single district.

to receive widow's benefits. The court distinguished *Stanley* and *LaFleur* as cases involving fundamental rights and *Vlandis* as a case involving irrational state action, and refused to extend the rule of those cases to a case which the court perceived to involve merely economic interests. *See, Salfi, supra*, 422 U.S. at 771–772, 95 S.Ct. 2457.

Since *Salfi*, the Ninth Circuit Court of Appeals has refused to extend the irrebuttable presumption analysis, noting that "[a]lthough no Supreme Court decision has formally overruled *LaFleur* or other 'irrebuttable presumption' decisions, it is apparent that the use of that doctrine has been severely limited." *DeLaurier v. San Diego Unified School District*, 588 F.2d 674, 683 n.16 (9th Cir. 1978). In reviewing a statute subject to the standards set forth in *Salfi*, "unless a classification is 'patently arbitrary' or 'utterly lacking in rational justification', there is no due process violation." *Doe v. Klein*, 599 F.2d 338, 340 (9th Cir. 1979).

The Supreme Court since *Salfi* has reemphasized the distinction between statutes regulating fundamental rights, for which irrebuttable presumptions may be deemed violative of due process, and statutes regulating economic matters, for which statutory irrebuttable presumptions are to be judged under a "rational justification" standard of review. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 22–24, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). *Cf., Parham v. Hughes*, 441 U.S. 347, 99 S.Ct. 1742, 1749, 60 L.Ed.2d 269 (1979) (*Stanley* inapplicable where right asserted was an economic one) with *Turner v. Dept. of Employment Security*, 423 U.S. 44, 46, 96 S.Ct. 249, 46 L.Ed.2d 181 (1975) (per curiam) (*Vlandis* applied where "basic human liberties" were at stake).

While it is difficult to reconcile all of the Supreme Court's pronouncements on the irrebuttable presumption doctrine its seems that in the wake of *Turner Elkhorn* and *Salfi* "purely economic matters" will not be subject to the demanding test of *Vlandis v. Kline* . . . but rather

will be governed by *Turner Elkhorn's* more deferential standard of review. That is to say congressional judgments in the form of "irrebuttable presumptions" in the economic area will be upheld where there is a rational relationship between the criteria set forth in the statutory mandate and a legitimate congressional purpose.

*Sakol v. C.I.R.*, 574 F.2d 694, 698 (2d Cir. 1978) (footnotes and citations omitted).

The interests of plaintiff nursing home which are regulated by 42 U.S.C. § 1320c–4(e)(1) are not fundamental rights comparable to the rights to procreate and raise a family which were implicated in *Vlandis* and *Stanley*. Plaintiff characterizes its interest in conducting PSRO-delegated reviews as an interest in operating its business to the optimum efficiency. This is an economic matter. This court must therefore apply the *Salfi* test of whether the preclusion of free-standing nursing homes from conducting PSRO-delegated reviews is "utterly lacking in rational justification".

■ Congress, through the amendments to 42 U.S.C. § 1320c–4(e)(1), precluded free-standing nursing homes such as plaintiff from conducting PSRO-delegated reviews because it concluded that " . . . these facilities have generally had far less experience in conducting in-house review activities than hospitals." S.Rep.No.95–453, 95th Cong., 1st Sess. 21; H.R.Rep.No.95–393 (Part II), 95th Cong., 1st Sess. 61, *republished in* 1977 U.S.Code Cong. & Admin. News, pp. 3039, 3064. If this conclusion has a valid foundation, the preclusion of free-standing nursing homes from conducting PSRO-delegated reviews would avoid the expense and bureaucratic problems of nationwide individual determinations, and thus would be rationally justified.

[T]he question raised is not whether a statutory provision precisely filters out those, and only those, who are in the factual position which generated the congressional concern reflected in the statute. Such a rule would ban all prophylactic provisions, and would be directly contrary to our holding in *Mourning [v. Family Publications Service, Inc.*, 411

U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973)]. Nor is the question whether the provision filters out a substantial part of the class which caused congressional concern, or whether it filters out more members of the class than non-members. The question is whether Congress, its concern having been reasonably aroused by the possibility of an abuse which it legitimately desired to avoid, could rationally have concluded that a particular limitation or qualification would protect against its occurrence, and that the expense and other difficulties of individual determinations justified the inherent imprecision of a prophylactic rule.

*Weinberger v. Salfi,* 422 U.S. 749, 777, 95 S.Ct. 2457, 2472–73, 45 L.Ed.2d 522, 545–46 (1975).

From the record, however, this court cannot ascertain whether or not Congress' conclusion that free-standing nursing homes generally have had "far less experience in conducting in-house review activities than hospitals" is a conclusion based in fact or speculation. Defendant's motion to dismiss therefore shall be denied, and the parties may submit evidence on whether or not there is support for Congress' thesis that free-standing nursing homes generally are less experienced than hospitals in conducting in-house review activities.

## II. EQUAL PROTECTION

Plaintiff's final claim is that the 42 U.S.C. § 1320c–4(e)(1) grant of authority of the PSROs to delegate Medicare-Medicaid review authority to hospitals and to nursing homes attached to hospitals but not to free-standing nursing homes denies free-standing nursing homes such as plaintiff the equal protection of the law.

Although the Fifth Amendment contains no express equal protection clause, the Fifth Amendment nonetheless prohibits discrimination that is "so unjustifiable as to be violative of due process." *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S:Ct. 693, 694, 98 L.Ed. 884 (1954). The Supreme Court's approach to Fifth Amendment equal protection claims and its approach to Fourteenth Amendment equal protection claims have always been identical. *Weinberger v. Wies-*

*enfeld,* 420 U.S. 636, 638 n.2, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975).

The test for the statute's constitutionality under equal protection principles is no different from the previously articulated test under the due process clause.

A statutory classification in the area of social welfare is consistent with the Equal Protection Clause of the Fourteenth Amendment if it is "rationally based and free from invidious discrimination." *Dandridge v. Williams,* 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491. While the present case, involving as it does a federal statute, does not directly implicate the Fourteenth Amendment's Equal Protection Clause, a classification that meets the test articulated in *Dandridge* is perforce consistent with the due process requirement of the Fifth Amendment. *Cf., Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884. *Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971); *Accord, Califano v. Aznavorian,* 439 U.S. 170, 99 S.Ct. 471, 58 L.Ed.2d 435 (1978).

A showing of a factual predicate, or lack thereof, for Congress' conclusion that free-standing nursing homes are generally less experienced in conducting in-house reviews than are hospitals will thus settle the arbitrariness question of both the equal protection and due process clauses.