Delores A. MOSHER, Plaintiff-Appellant,

v.

H. C. SAALFELD and Wesley J. Robinson, Defendants-Appellees.

No. 77–2641.

United States Court of Appeals, Ninth Circuit.

Dec. 13, 1978.

Rehearing Denied Jan. 26, 1979.

---

Delores A. Mosher, pro se.

Ridgway K. Foley, Jr., Portland, Or., for defendants-appellees.

Before GOODWIN and ANDERSON, Circuit Judges, and JAMESON,* District Judge.

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

PER CURIAM:

Delores A. Mosher, appearing pro se, has appealed from a summary judgment dismissing her civil rights action against H. C. Saalfeld, the Director of the Oregon Department of Veterans' Affairs, and Wesley J. Robinson, a trust officer employed by the Department.[1]

In her amended complaint appellant sought actual and punitive damages from appellees, pursuant to 42 U.S.C. § 1983, alleging that they conspired to and did deprive her of property without due process of law by forcibly entering her house while she was at work, removing personal property, locking her out of the house by changing the locks, and posting the house with "No Trespass" signs. The case was referred to a United States Magistrate for trial. After extensive discovery, appellees moved for summary judgment. The magistrate recommended that the motion be granted. Following objections by appellant, the district judge made a *de novo* review of the portions of the proposed findings and recommendations to which objection had been made. Summary judgment was then entered dismissing the action. We affirm.

### Factual Background

On June 23, 1969, the Veterans Administration found James L. Bury, a veteran, "incompetent to properly handle funds" and "in need of a guardian". In state court proceedings his mother was appointed his guardian on May 1, 1970. On September 30, 1971 Bury married appellant, and on July 10, 1972 the court substituted appellant as Bury's guardian. The facts leading to this action were well summarized by the magistrate as follows:

> The Burys purchased a house in Coquille, Oregon, financed through the Department of Veteran Affairs. Mr. Bury moved out of the house on December 8, 1973, and filed dissolution proceedings against the plaintiff. He also petitioned to have plaintiff removed as his guardian.

> Subsequently, in 1974, the Lane County Circuit Court dismissed plaintiff as guardian and placed Mr. Bury under a conservatorship with the Department of Veteran Affairs. Defendant Robinson was appointed trust officer and was charged with safeguarding Mr. Bury's property and estate.

> In May of 1974, Mr. Bury contacted defendant Robinson and asked that Robinson obtain an oak table and color television set from the house in Coquille, where plaintiff continued to reside. Robinson, concerned about the fact that the dissolution proceedings were not yet finalized, consulted the State Attorney General and was advised that he could legally obtain the articles that Mr. Bury requested.

> On May 9, 1974, Robinson went to the Coquille house. He had previously been informed that the home was unoccupied and that the phone had been disconnected. He found the mail box full of letters and a broken basement window, which further confirmed his belief that the house was unoccupied. He entered the home through the broken basement window, removed the two items requested by Mr. Bury, changed the locks, posted the property with Department of Veteran's Affairs signs, and notified the local County Service Officer as well as the Coquille Police Department.

> Subsequently, plaintiff informed the Department of Veteran's Affairs that she had not abandoned the house. Arrangements were made for plaintiff to reoccupy the house, which she did.

> In April 1975, the marriage between plaintiff and Mr. Bury was dissolved. The color television and oak table were awarded to Mr. Bury.

### Liability of Saalfeld

■ In her deposition appellant stated that she named Saalfeld as a defendant

---

1. In her initial complaint, appellant named 24 individuals, one state agency, and two "Jane Does" as defendants in her civil rights action pursuant to 42 U.S.C. §§ 1983 and 1985(2) and (3). After the court granted numerous motions to dismiss appellant filed an amended complaint, limiting her claim for relief to charges under 42 U.S.C. § 1983 against Saalfeld and Robinson.

because he was the Director in charge of the Department of Veterans Affairs. There is no evidence that Saalfeld played any personal role in the alleged deprivation of property. This court has held that in a § 1983 action vicarious liability may not be imposed on a state or municipal official for the acts of lower officials in the absence of a state law imposing such liability. *Boettger v. Moore*, 483 F.2d 86, 87 (9 Cir. 1973); *Hesselgesser v. Reilly*, 440 F.2d 901, 903 (9 Cir. 1971). Appellant has cited no Oregon law which would impose vicarious liability on Saalfeld.

■ Appellant argues that she does not rely upon the doctrine of respondeat superior, but rather upon her allegation that Saalfeld conspired with Robinson to deprive her of her property. While it is true that conspiracy claims may be brought under § 1983 (*Mizell v. North Broward Hospital District*, 427 F.2d 468, 473 (5 Cir. 1970)), more than vague conclusory allegations are required to state a claim. See *Hickey v. New Castle County*, 428 F.Supp. 606, 611 (D.Del.1977). In her deposition appellant relies upon alleged conversations between Saalfeld, the Governor of Oregon and others, but she did not set forth the substance of the conversations. In any event, these conversations occurred after appellant had been locked out of her house. The facts upon which appellant relies are insufficient to show that Saalfeld conspired with anyone to deprive appellant of her property or to violate her constitutional rights.

### Liability of Robinson

■ Robinson relies upon the defenses of qualified executive immunity and absolute judicial immunity. Under the qualified executive immunity doctrine (see *Scheuer v. Rhodes*, 416 U.S. 232, 247–48, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)), this court has held that a government officer performing acts in the course of official conduct is insulated from damage suits "if (1) at the time and in light of all the circumstances there existed reasonable grounds for the belief that the action was appropriate *and* (2) the officer acted in good faith". *Mark v. Groff*, 521 F.2d 1376, 1379–80 (9 Cir. 1975).

Robinson has met these conditions. As conservator of Bury's estate, it was Robinson's duty to protect Bury's property. See Or.Rev.Stat. §§ 126.293 and 126.313(1). The reasonableness of Robinson's actions must be determined from what he knew at the time. Robinson was informed that the house was unoccupied and that the telephone had been disconnected. Bury requested him to retrieve certain items from the house. Robinson found the mailbox full of letters, confirming in his own mind that no one had been at the house for a substantial period of time. Robinson stated he entered the house through a broken basement window.[2] Because Bury was still married to appellant, Robinson checked with the State Attorney General's office and was told he could remove the color television and oak table. Afterward he changed the locks on the house, posted the property with Department of Veterans' Affairs signs, and notified the local VA office and the police in an effort to safeguard Bury's property.

Appellant submitted various affidavits in an effort to dispute Robinson's good faith. While the affidavits contradicted some minor factual matters,[3] we agree with the magistrate that, "Whatever factual issues may be raised by plaintiff's affidavits do not reach the issue of the defendant's good faith or his reasonable belief that the action was appropriate." Robinson was insulated from suit under the doctrine of qualified executive immunity.

---

**2.** Appellant contests the fact that Robinson entered her house through a broken basement window. She has introduced affidavits of persons who claim they did not know of any broken windows in the house. Regardless of how Robinson entered the house, he did so with the express authorization of Mr. Bury, as co-owner of the house.

**3.** As noted by the magistrate, appellant submitted affidavits from persons who saw two men at the house; an affidavit from a police officer that there was evidence the front door was forced; and another affidavit that appellant's mother picked up the mail every day.

In the alternative Robinson claims immunity under the doctrine of absolute judicial immunity. The case of *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), established that the common law rule of judicial immunity was an absolute bar to liability of judges in a civil rights action pursuant to § 1983. This absolute immunity has been extended to other officials of the judiciary: clerks of court, referees and trustees in bankruptcy, prosecuting attorneys, and receivers. See *Smallwood v. United States*, 358 F.Supp. 398, 402–06 (E.D.Mo.1973), and cases cited therein.[4] In *Holmes v. Silver Cross Hospital*, 340 F.Supp. 125, 130–31 (N.D.Ill.1972), absolute judicial immunity was extended to a conservator appointed by the court for the purpose of authorizing a blood transfusion for an incompetent. The rationale of other judicial immunity cases is applicable here. Robinson, through the Department of Veterans' Affairs, was appointed by the court as conservator of Bury's estate. He was acting pursuant to his court appointed authority in the performance of his statutory duties. He was acting in a quasi-judicial capacity and was immune from suit.

### Summary Judgment

■ Summary judgment is appropriate where no material issues of fact exist and where a party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.Pro. It is not intended to cut off a party's right to a jury trial where there are genuine issues to try, 6 Moore's Federal Practice, Para. 56.06[2] (2d Ed.1976), but is intended to eliminate the waste of the time and the resources of litigants and the courts where it is shown there are no material issues of fact. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1135–36 (9 Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). When a motion for summary judgment is made and supported by affidavits or other material, the adverse party may not rest upon the allegations of his pleadings. He must respond by affidavits or otherwise and set forth "specific facts showing that there is a genuine issue for trial". Rule 56(e), Fed.R.Civ.Pro. Although both the magistrate and district judge carefully explained this requirement to appellant, she did not come forth with material facts which controvert the defendants' defenses. While appellant attempted to "articulate disputed factual issues", the district court found "none that are *material*". We agree. Summary judgment was proper.[5]

AFFIRMED.

---

**4.** See also *Sykes v. State of California (Dept. of Motor Vehicles)*, 497 F.2d 197, 201 (9 Cir. 1974).

**5.** See *Midwest Growers Co-op. v. Kirkemo*, 533 F.2d 455, 463–64 (9 Cir. 1976).