**M. P. DORAN, James A. Scott, and James H. Bailey, Plaintiffs,**

v.

**F. H. HOULE and James W. Glosser, Defendants.**

**No. CV–79–14–GF.**

United States District Court,
D. Montana,
Great Falls Division.

June 25, 1981.

---

**9.** See footnote 8, *supra*.

Gregory O. Morgan, Bozeman, Mont., for plaintiffs.

Robert T. O'Leary, U. S. Atty., C. Richard Anderson, Asst. U. S. Atty., Butte, Mont., for defendant Houle.

Jack L. Lewis, Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., for defendant Glosser.

## MEMORANDUM

HATFIELD, District Judge.

Veterinarians Doran, Scott and Bailey brought suit against F. H. Houle, an administrator of the United States Department of Agriculture, Animal and Plant Health Inspection Service, and against James W. Glosser, an administrator of the Montana Department of Livestock. Plaintiffs brought the action pursuant to 42 U.S.C. § 1983. Jurisdiction is based on 28 U.S.C. § 1343 and § 1331.

Plaintiffs claim that these two administrators together wrongfully revoked permits to perform the brucellosis card test for the brucellosis program testing in Montana. Plaintiffs allege that defendants revoked their permits without notice or a hearing which violated their rights of procedural due process and equal protection. Plaintiffs claim an infringement of a liberty and property interest as set out in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Before the court are defendants' motions for summary judgment pursuant to Rule 56(c), Fed.R.Civ.P. For the reasons contained herein the motions will be denied in part and granted in part.

FACTS

Drs. Doran, Scott and Bailey had established a veterinary practice in a livestock yard in Great Falls, Montana. All three are licensed veterinarians authorized to practice veterinary medicine as provided by Montana and Federal law. All were deputy state veterinarians for the State of Montana. As part of the practice all three had yearly permits issued by the government for the use of the brucellosis card test kit. As such they may perform various official tuberculosis and brucellosis tests on animals, perform contagious disease control,

and write health certificates necessary for interstate shipment of cattle.

Brucellosis is a transmittable infectious bacterial disease found primarily in cattle, the early detection of which is vital to the shipment of cattle from a stockyard. One method for detecting this disease involves the drawing of a blood sample which is then analyzed by the State Laboratory located in Bozeman, Montana. Another method is the brucellosis card test kit. It is a rapid screening procedure used only in the stockyard market to confirm that an animal does *not* have brucellosis. If the test results are negative an animal may be sold through the market and shipped without the four to five day delay which ensues if the results are sent back from the State Laboratory.

The kits are the exclusive property of the federal government and cannot be used without their express permission.

Prior to November, 1977, plaintiffs were authorized by state and federal officials to perform the brucellosis card test.[1] On November 28, 1977, defendant Glosser, the state official, without notice or hearing suspended plaintiffs' authority to perform card tests and had the card test kit impounded.[2] By suspending plaintiffs' authority to administer the card tests, plaintiffs were put in the same position as other accredited state deputy veterinarians except that they no longer could perform these rapid screening tests. Thus, although plaintiffs could still continue their private practice in livestock markets, plaintiffs contend that the removal of the permit in effect destroyed their livestock yard practice because they could no longer rapidly screen for brucellosis.

It wasn't until May of 1978 that plaintiffs were afforded a hearing with the Montana Department of Livestock to contest the charges and revocation. As a result of the hearing the Board of Livestock voted to reinstate plaintiffs' card test authority and directed defendant Glosser to sign the permits. Defendant Glosser signed the permits, but when the permits were presented to the federal official, Mr. Houle, he refused to co-sign the permits. Plaintiffs continue to be deprived of their permits.

Defendants are unable to point to any laws or regulations governing the issuance or revocation of the permits. The only authority comes from a "memorandum of understanding" between the Montana Department of Livestock and the Veterinary Services, USDA, dated August 7, 1973. The memorandum, while authorizing the use of the kits, does not set forth any procedures for the issuance or revocation of the card test permit.

Plaintiffs assert three bases for recovery. First, that the use of these permits was a government benefit sufficient to create a property interest so as to invoke the constitutional protections of due process. Second, that their reputations were damaged by the revocation which violates a protectable liberty interest. And third, that defendants engaged in an unlawful conspiracy to deprive plaintiffs of their constitutional rights.

Defendants argue that plaintiffs have neither sufficient "property" or "liberty" interest in the continued use of these permits and that therefore summary judgment ought to be granted in favor of them. In addition, defendant Houle argues that he is protected by the qualified immunity doctrine as set forth in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) and *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

Under Rule 56(c), Fed.R.Civ.P., summary judgment is proper only where there is no

---

1. Even though plaintiffs' card test permits expired by their own terms one year after they were issued (in this case January through March of 1976) and prior to the November, 1977 incident, state and federal officials continued to provide the card test kits and otherwise treat plaintiffs as if their permits had not expired. There was no real dispute as to this, and accordingly the court will view the permits as being renewed.

2. Although not substantiated in the record, the reason for Glosser's decision centered around a rumor that plaintiffs may have released cattle for interstate movement suspected of being infected with brucellosis.

genuine issue of any material fact, or where "viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law." *Yazzie v. Olney, Levy, Kaplan & Tenner*, 593 F.2d 100, 102 (9th Cir. 1979). An examination of the facts and legal claims suggests summary judgment is appropriate only to the liberty interest claim.

Plaintiffs' principal claim is that the state and federal government officials denied them due process in the manner in which they revoked their card test permits. There is no dispute that plaintiffs' permits were revoked without notice or hearing. However, in order to invoke the protection of the due process clause plaintiffs, as existing permittees of the card test, must show that they have a sufficient property or liberty interest protected by the due process clause.

PROPERTY INTEREST

The test for identifying a sufficient property interest is not clearly defined. In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Court stated:

> ... To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
>
> Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*See also, Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

■ These and other cases make clear that "a property interest in a benefit protected by the due process clause results from a legitimate claim of entitlement created and defined by an independent source, such as state or federal law." *See, Russell v. Landrieu*, 621 F.2d 1037, 1040 (9th Cir. 1980).

■ The question here is whether plaintiffs had an expectation of entitlement for the continued use of these permits sufficient to create a property interest. Neither side can point to specific statutes or regulations dealing with the issuance or revocation of card test permits. There exists only a "memorandum of understanding" between the federal and state officials which authorizes the State to jointly issue these card test permits to qualifying state deputy veterinarians such as plaintiffs.

Except perhaps for emergency health situations, defendants are unable to point to convincing authority which unmistakenly commits the decision to revoke these permits to the unbridled discretion of these officials. While it may be true that the ownership of the test kits rests solely with the federal government, nothing here indicates the Congress of the State intended to give defendants discretion so broad that there is no law to apply and that plaintiffs' only safeguard to the removal of these permits would be the good nature of these officials. *See, Pence v. Kleppe*, 529 F.2d 135 at 140 (9th Cir. 1976); *cf., Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980). It appears that state deputy veterinarians who have held card test permits for several years past rely on their continued right to use the test in their stockyard practice at least as much as Alaska natives rely on their continued use of land, *see, Pence v. Kleppe*, 529 F.2d 135, 140–141 (9th Cir. 1976), or as tenants of a HUD project rely on continued low-income housing, *see, Geneva Tower Tenants Org. v. Federated Mortgage Investors*, 504 F.2d 483 (9th Cir. 1974), or, as welfare recipients rely on continued welfare benefits, *see, Goldberg v.*

*Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), or as qualifying unemployed individuals rely on unemployment compensation, *see, Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). The court holds that a protectable property interest is created where the government issues permits which have the effect of creating a specialized veterinary practice.

■ The government cannot on the one hand create a business which is dependent upon a permit and then with the other destroy it by revoking the authorizing permits without first affording sufficient due process. *See, Standard Airlines, Inc. v. Civil Aeronautics Board*, 177 F.2d 18 (D.C. 1949); *Gonzalez v. Freeman*, 334 F.2d 570 (D.C.1964).

■ Since it has been determined that due process applies here, the question remains what process is due.[3] *See, Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). While the requirement of due process of law depends on several factors such as the interest protected, the risk of loss, and the governmental interest, *see, Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Goldberg v. Kelly*, 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970), the fundamental elements of due process—notice and hearing—were lacking when defendants withdrew the permits and refused to reinstate. Considerations of basic fairness required that plaintiffs be notified of specific charges and an opportunity to present evidence in rebuttal and receipt of the reasons for revocation. In this court's view the suspension of these card test permits in this manner improperly terminated an otherwise valid business property interest.

## LIBERTY INTEREST

■ The court now turns to an examination of whether defendants' summary revocation of the permits violated plaintiffs' liberty interest within the meaning of the Fifth or Fourteenth Amendment. Plaintiffs claim that their reputations were damaged when defendants terminated their right to conduct this type of brucellosis test. Plaintiffs assert the termination is an adverse reflection on their business competence.

As this court recognized in *B.G.M. Enterprises v. Harris*, 482 F.Supp. 1073, 1078 (D.Mont.1980), the "notion of liberty, while imprecise, distinguishes between a stigma of moral turpitude, which infringes the liberty interest, and a charge of incompetence . . . which does not." [citations omitted]

Even if business reputation is protected by a liberty interest, *see, B.G.M. Enterprises, supra*, generally a person's interest in his "good name, reputation, honor or integrity" is not impaired unless the reasons for termination are made public. *See, Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Haimowitz v. University of Nevada*, 579 F.2d 526, 529 (9th Cir. 1978); *Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 365–366 (9th Cir. 1976). Plaintiffs do not allege that the state or federal government publicly stated the assumably false reasons for the revocation of the card test permits. Thus, absent public disclosure, there can be no charge that plaintiffs' "standing and associations in the community" were seriously damaged.[4] *Roth, supra*, 408 U.S. at 573, 92 S.Ct. at 2707. Thus, without more plaintiffs are precluded from recovery on this basis and summary judgment shall be entered in favor of defendants on this claim.

---

**3.** Both parties argue the applicability or inapplicability of both the Montana Administrative Procedures Act, §§ 2–4–101 M.C.A., *et seq.*, and the Federal Administrative Procedures Act, 5 U.S.C. §§ 551, *et seq.* The court need not determine whether the full panoply of procedural rights under these Acts apply here since there is neither the appearance nor the reality of fairness in the process by which defendants revoked plaintiffs' permits.

**4.** *See, Davis v. Oregon State University*, 591 F.2d 493, 498 (9th Cir. 1978). There the court held that an untenured professor's liberty interest in his good name and reputation was not impaired where reasons for his dismissal were not made public.

## QUALIFIED IMMUNITY

Defendants argue that even if there is a protectable property interest which invokes the due process clause, the defense of qualified immunity as explained in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) is available. These two cases recognize the doctrine that federal and state executive officials enjoy a qualified immunity for functions performed in their official capacity and which varies according to the scope of discretion, the responsibility of the office and the surrounding circumstances.

■ In *Scheuer, supra*, the Court stated "[i]t is the existence of reasonable grounds for the belief formed at the time and in light of all circumstances, coupled with good-faith belief, that affords the basis for qualified immunity of executive officers for acts performed in the course of official conduct." 416 U.S. at 247–248, 94 S.Ct. at 1691–92. A government official is not immune from liability "if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights" of a plaintiff. *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975); *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). In short, qualified immunity is based on reasonable grounds and good-faith belief.

■ The burden remains with the official claiming immunity to demonstrate "that his conduct was justified by an objectively reasonable belief that it was lawful." *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572 (1980); *see also, Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978).

■ The court cannot conclude with certainty based on the affidavits and evidence submitted for this summary judgment motion that defendant Houle is entitled to qualified immunity. Rather, there exists material issues of fact which goes to Houle's scope of discretion, responsibilities, good-faith belief, and the circumstances as they appeared at the time he refused to sign the permits. *See, Morrison v. Jones*, 607 F.2d 1269, 1274 (9th Cir. 1979); *cf., Mosher v. Saalfeld*, 589 F.2d 438 (9th Cir. 1978). Thus, summary judgment on this basis is inappropriate.

## CONSPIRACY

■ Plaintiffs also claim that defendants and another federal administrator conspired to violate plaintiffs' constitutional rights. Plaintiffs claim that Glosser, Houle and an agent of the United States Department of Agriculture, Robert Morgan, acted in consort to deprive them of their otherwise entitled permits to conduct brucellosis tests. Plaintiffs basically claim that various conversations took place among these three, the substance of which is, at this time, rather vague.

Although defendants submit affidavits by various officials of the United States Department of Agriculture, including Mr. Morgan, those affidavits raise in the court's view questions of material fact which would best be left for resolution at the trial level. Those questions of fact include various dates affiants communicated with Houle, the reasons for not signing the permits after the Board of Livestock's recommendation to reinstate the same, and the reasons for other card test permits being signed while the federal government was conducting an investigation as to the State's use of these permits. While this court recognizes that more than vague conclusionary allegations are required to state a conspiracy claim, *see, Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), nevertheless the facts upon which plaintiffs rely should be more fully developed at trial.

In sum, the court concludes that under the facts as found by the court, there has been an unconstitutional denial of due process under the Fifth and Fourteenth Amendments by reason of the summary revocation of the plaintiffs' permits. However, the court can find no basis for a liberty interest claim. Therefore, in addition to the con-

spiracy claim the issue remaining for trial is the qualified immunity defenses.

Accordingly, defendants' motions for summary judgment are therefore denied in part and granted in part. An appropriate order shall issue.