M.P. DORAN, James A. Scott and James H. Bailey, Plaintiffs-Appellees, Cross-Appellants,

v.

F.H. HOULE and James W. Glosser, Defendants-Appellants, Cross-Appellees.

Nos. 82–3445, 82–3457 and 82–3465.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 1983.

Decided Nov. 18, 1983.

As Amended on Grant of Rehearing Dec. 19, 1983.

Gregory O. Morgan, Bozeman, Mont., for plaintiffs-appellees, cross-appellants.

Jack L. Lewis, Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., Wendy M. Keats, Dept. of Justice, Washington, D.C., for defendants-appellants, cross-appellees.

Before ANDERSON and FLETCHER, Circuit Judges, and TAYLOR *, District Judge.

* The Honorable Fred M. Taylor, United States District Judge, District of Idaho, sitting by des- ignation.

FRED M. TAYLOR, District Judge:

Three Montana veterinarians brought an action under 42 U.S.C. § 1983 and the Constitution against two government officials, Dr. Glosser who was employed by the state of Montana, and Dr. Houle who was employed by the federal government. The complaint alleged a conspiracy to deprive plaintiffs of certain government issued permits without due process of law. The permits in question, which were part of a joint federal-state disease eradication program, allowed the holder to perform a specific test for brucellosis in cattle. Plaintiffs obtained a substantial judgment following a jury trial and defendants appealed. We reverse on the basis that plaintiffs had no constitutionally protected interest in the permits.

OVERVIEW

Brucellosis is a highly contagious and infectious bacterial disease. It occurs primarily in cattle, causing reproductive failure and the abortion of calves. Testimony at trial indicated that, by comparison, brucellosis is presently a greater threat to ranchers than anthrax or hoof-and-mouth disease. Brucellosis can also cause undulant fever and other ill effects in humans.

Montana is particularly vulnerable to this disease as cattle ranching is a major industry in the state. The Department of Livestock is the state agency directly responsible for monitoring and protecting the health of Montana's cattle population.

The federal government, acting through the United States Department of Agriculture (USDA), is also involved in regulating animal welfare. See 21 U.S.C. §§ 111, 114 (1976). One of the steps taken by the federal government to prevent the spread of brucellosis is a requirement that cattle moved interstate be tested and certified as "brucellosis-free". See Department of Agriculture Regulations, 9 CFR, Part 78, subpart B (1983).

There are a number of different tests which can be used to detect the presence of brucellosis in cattle. This case deals with the permits to perform a particular diagnostic test, the "card test". The principal advantage of the card test is its ability to quickly and reliably determine whether a particular animal does not have brucellosis. This makes it particularly suitable for use at auction markets where cattle are assembled and sold prior to interstate shipment.

The card test is performed on a blood sample which can be drawn by any licensed veterinarian. If the test results are negative, the animal is considered to be free of the disease and may be shipped across state lines. If the results are positive, additional tests are required to be certain the animal is not infected. In the interim, the suspect animal is placed in quarantine until follow-up tests can be completed.

The card test itself is owned by the federal government. The USDA has for many years issued permits to qualified veterinarians. These permit holders have never been allowed to charge cattle owners for performing the test, although as licensed veterinarians they may charge for drawing the necessary blood sample.

In 1973, alerted by a resurgence of brucellosis in Montana, the USDA and the Montana Department of Livestock agreed to cooperate in an aggressive joint-eradication program. The basic parameters of the program were set forth in two government memoranda: a federal Veterinary Services Memorandum ·and a joint federal-state Memorandum of Understanding.

All three plaintiffs applied for and were issued card test permits in 1976, pursuant to this joint federal-state program. At that time, Drs. Bailey and Scott had recently joined Dr. Doran's practice as salaried associates. Dr. Doran had been practicing veterinary medicine in Great Falls for approximately twenty-five years and had previously held a card test permit. Plaintiffs were unique in that all other permit holders in Montana were employed by the state and worked exclusively at auction markets.

The dispute which culminated in this action began with the discovery in November,

1977, that two cows card tested by plaintiffs and found to be suspect had been released from quarantine prior to a final determination of their health by the Montana State Laboratory. On November 28, 1977, Dr. Glosser, the State Veterinarian for the Department of Livestock, orally notified plaintiffs that their permits were being terminated as a result of their failure to control the two suspect animals and their prior history of permit violations. A letter confirming the termination was mailed two days later.

Plaintiffs, who thought the termination unjustified, made no serious effort to appeal Dr. Glosser's decision until January, 1978, when they attempted to present their case before the Department of Livestock's Board of Directors. The Board Chairman advised plaintiffs they would need to make a formal request for a hearing. Such a request was made, but not until March 6, 1978. The matter was set to be heard in April. At plaintiffs' request, the hearing was subsequently postponed until May. In the meantime, one of the Board's staff attorneys presented plaintiffs with a three page letter explaining the reasons for Dr. Glosser's termination of their card test authority.

In May, the Board voted to reinstate the three permits. However, because of a subsequent federal investigation into the quarantine breach and changes in Department of Livestock policy regarding re-issuance of card test permits to private veterinarians, plaintiffs were unable to have their permit authority reinstated.

Plaintiffs then filed this action alleging that Dr. Glosser and Dr. Houle, an employee of the USDA, conspired to deprive plaintiffs of their constitutionally protected liberty and property interests without due process of law. Following summary judgment motions, the district court determined, *inter alia*, that a property interest did exist in the card test permits.[1] *Doran v. Houle*,

516 F.Supp. 1231, 1234 (D.Mont.1981). The case proceeded to trial where a jury awarded plaintiffs compensatory and punitive damages totaling $272,000.

## MERITS

■ The threshold issue in this case is whether a constitutionally protected property interest was implicated. Although the answer to the question of whether a property interest was present necessarily depends on the facts in this case, it remains a legal issue requiring an interpretation of the federal Constitution. *Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). Therefore, we are obligated to conduct an independent review of plaintiffs' claim and are not bound by the district court's prior determination. *See Shillingford v. Holmes,* 634 F.2d 263, 265–66 (5th Cir.1981).

The Supreme Court in *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) made it clear that property interests protected by procedural due process are not restricted to a few rigid, technical forms. Rather, the constitutional concept of property embraces a broad, although not infinite, range of interests. *Id.* at 571–72, 92 S.Ct. at 2705–06; *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *see generally* C. Reich, *The New Property,* 73 Yale L.J. 733 (1964).

■ To have a property interest in any government benefit, a person must have more than an abstract need or desire for it; he must have a legitimate claim of entitlement. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Plaintiffs contend they have such a legitimate claim, while defendants argue that any expectation of continued entitlement was entirely unilateral.

■ A legitimate claim of entitlement cannot be premised on the Constitution it-

---

1. The district court also determined that defendants' actions did not violate plaintiffs' liberty interests. *Doran v. Houle,* 516 F.Supp. at 1235. Plaintiffs, on appeal, indirectly question this finding. We see no error in the district

court's decision regarding plaintiffs' alleged liberty interest. *See, Bishop v. Wood,* 426 U.S. 341, 348–49, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976).

self, but must be derived from some independent source in either state or federal law. *Id.* In the immediate case, there were no statutes or regulations establishing administrative standards for issuing or revoking card test permits. *Cf. Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (social security disability benefits). Nor was there an express contract granting a right to continued possession. *Cf. Lynch v. United States,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934) (war risk insurance policies).

The absence of a specific statute, regulation or written contract in this case does not necessarily foreclose the possibility that a property interest might have been created, although the absence of such formal sources is "highly relevant" to the due process question. *Sindermann,* 408 U.S. at 602, 92 S.Ct. at 2699–700. The Supreme Court has declared that a legitimate claim of entitlement can also be based on the conduct and representations of government officials when their actions lead to the creation of a "mutually explicit understanding". *Id.* at 601, 92 S.Ct. at 2699.

The record shows that the card test program in Montana was jointly administered and regulated by the USDA and the Montana Department of Livestock. The permits were issued to qualified veterinarians in accordance with the policies outlined in Veterinary Services Memorandum No. 551.-16 and the joint federal-state Memorandum of Understanding. The Veterinary Services Memorandum merely describes basic federal policy concerning use of the card test and offers general guidelines for establishing "[a]n *annual* permit system". [emphasis added] The joint federal-state memorandum, which outlines the permit system in Montana, is just as cursory. The permits themselves, similarly, do not refer to any specific procedures for obtaining a renewal or challenging a cancellation decision, although each permit includes a specific date of issuance and expiration.

Each of these documents—the federal Veterinary Services Memorandum; the joint federal-state Memorandum of Understanding and the individual permits—included the following statement:

> *Annually, prior to renewal of the permit,* the permit holder may be required to . . . conduct and interpret the card test on standardized check test serums. . . . [emphasis added]

In this case, all three permits had expired at least eight months prior to the time Dr. Glosser terminated plaintiffs' card test authority. On appeal, plaintiffs maintain that because the administering agencies failed to enforce the permit expiration dates the permits should be considered reissued. The facts do not support such a conclusion. Plaintiffs have not cited any testimony or evidence in the record which would indicate the state and federal agencies intended such a result or, by their actions, would have led a reasonable person to conclude that the permits had been renewed. Had plaintiffs applied for renewal but received no response from the government, it might have been possible to find that the permits had been reissued for another year. However, plaintiffs never made such a request; they simply ignored the renewal requirement and continued to perform the federally owned test. Therefore, to the extent plaintiffs retained any authority beyond the permit deadlines, that authority was held at the sufferance and will of the officials charged with administering the permit program in Montana. *See Otten v. San Francisco Hotel Owners Assoc.,* 74 Cal.App.2d 341, 168 P.2d 739 (1946) (nonrenewal of expired service contract).

■ Where the government, as the source of the interest in question, retains unrestricted discretion over future enjoyment of the interest, the interest is not a protected entitlement. *Bishop v. Wood,* 426 U.S. 341, 344–47, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976). Thus, if the permits were held at the will of the governments administering the permit program in Montana, it is axiomatic that plaintiffs can make no legitimate claim to continued possession.

Even if the annual permits had been implicitly reissued in this situation, it is appar-

ent that the joint eradication program was designed to give the state and federal governments unrestricted discretion over all matters involving card test permits. There were, for example, no published criteria for choosing among qualified applicants or specific standards for determining whether to renew a previously issued permit. *Cf. Roth,* 408 U.S. at 578, 92 S.Ct. at 2709 (no property interest, where no standards and criteria for reemployment).

Indeed, the very nature of the joint eradication program suggests that the administering agencies were to retain complete discretion in regard to card test permits. The program was created in response to the danger posed by the outbreak of a highly contagious disease which could have a potentially devastating effect on the economy and health of the state. Under these circumstances and without any affirmative statements to the contrary, it is reasonable to conclude that the operation of the program, including control over the card test permits, was left to the discretion of the responsible government officials. The absence of regulations governing permit issuance and cancellation can thus be seen as reflecting the need for flexibility inherent in this type of government program.

There is, finally, no direct evidence to support the existence of a mutually explicit understanding. The arguments offered to advance the existence of such an understanding in this case are not premised on anything the Montana Department of Livestock or USDA did, but on what they failed to do. Plaintiffs do not claim that any agency or official affirmatively represented that existing permit holders would be entitled to retain their authority indefinitely, or even beyond the first year. Instead, plaintiffs rely on arguments describing the governments' lack of action, including the failure to enforce the permit expiration dates, establish permit renewal procedures and expressly provide that the permits could be removed at the discretion of government officials. Neglecting to enforce the permit expiration dates in this single instance cannot reasonably be said to have created a long-standing practice of

ignoring the permit renewal requirement and there certainly is nothing which approaches a "common law" of reissuance in this case. *See Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093, 1099 (9th Cir.1981); *see also Roth,* 408 U.S. at 578, n. 16, 92 S.Ct. at 2709 n. 16. There is, for example, no evidence that the expiration dates of other permits were ignored or that the government agencies in this case were even aware that plaintiffs' permits had expired. The mere fact a person has received a government benefit in the past, even for a considerable length of time, does not, without more, rise to the level of a legitimate claim of entitlement. *Bollow,* 650 F.2d at 1099.

Similarly, the absence of regulations governing the permit program does not lead to the conclusion that the state and federal governments intended to create a right to continued entitlement. Rather, it tends to support the conclusion that plaintiffs held only a unilateral hope that the agencies would continue to recognize their authority in the future. *See Arena Del Rio, Inc. v. Gonzales,* 704 F.2d 27 (1st Cir.1983).

██ In conclusion, it is evident from the record that plaintiffs' card test authority was held subject to the unrestricted discretion of those government officials administering the joint eradication program. Nothing has been shown which indicates the existence of an agreement contradicting the governments' discretion and securing for plaintiffs a legitimate expectation of continued entitlement.

After fully reviewing the record in this case, we conclude that the jury's verdict was premised upon an erroneous legal conclusion regarding the scope of protected property under the due process clauses of the fifth and fourteenth amendments to the Constitution. Accordingly, we must vacate and remand the case to the district court with instructions to dismiss plaintiffs' action for failure to state a proper claim for relief under 42 U.S.C. § 1983 or directly under the Constitution. This result makes it unnecessary to discuss or decide any of

the several additional issues raised by the parties on appeal.