**GOLDEN STATE TRANSIT CORPORA-TION a California corporation, Plaintiff/Appellant,**

v.

**CITY OF LOS ANGELES, a municipal corporation, Defendant/Appellee.**

**CA No. 83–6441.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1984.

Decided Feb. 26, 1985.

Norris, Circuit Judge, filed an opinion concurring in part and conferring in the judgment.

Zachary D. Fasman, Kathleen Johnson Raynsford, David B. Siegel, Crowell & Moring, Washington, D.C., Daniel R. Shulman, Patricia A. Knipe, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for plaintiff-appellant.

John F. Haggerty, Los Angeles, Cal., for defendant-appellee.

Before FARRIS, ALARCON and NORRIS, Circuit Judges.

FARRIS, Circuit Judge:

Golden State Transit purchased the assets of the bankrupt Yellow Cab Company in 1977 and the City thereafter approved the transfer of Yellow Cab's franchise. On March 31, 1980, Golden State made a timely application for renewal of its taxicab franchise to become effective upon its expiration on March 31, 1981. The City's Department of Transportation reported that Golden State was in full compliance with all of the terms and conditions of its franchise. Acting on this report, the Board of Transportation Commissioners recommended approval of the franchise renewal to the Transportation and Traffic Committee of the City Council on September 4, 1980 and again on January 26, 1981. The Transportation and Traffic Committee recommended to the City Council that Golden State be granted a five-year renewal franchise.

An ordinance approving Golden State's franchise as well as ordinances approving twelve other taxicab franchises operating within the City were placed on the City Council calendar for February 11, 1981. In October 1980, Golden State's agreement with the Teamster's Union expired and they failed to reach a new agreement. On February 5, 1981, the Teamsters informed the City of the labor dispute. On February 11, 1981, Golden State drivers went out on strike.

All pending franchises except Golden State's were renewed on February 11, 1981, including one that had been disapproved by the Department of Transportation. The ordinance pertaining to Golden State was continued to February 17, 1981 to take effect if the Council found, on or before March 27, 1981, that the extension was in the best interest of the City.

On March 23, 1981, the City Council considered a motion to adopt a finding that the 30-day extension of Golden State's franchise was in the best interests of the City. The motion was defeated eleven votes to one. Golden State brought suit in district court, charging that the City's action was preempted by the NLRA, as well as being violative of the due process and equal protection clauses of the United States Constitution. The district court granted Golden State's request for a preliminary injunction preserving its status as a franchised operation on the basis of its preemption claim. *See Golden State Transit Corp. v. City of Los Angeles,* 520 F.Supp. 191, 194 (C.D.Cal. 1981). We reversed. *Golden State,* 686 F.2d 758, 760–761 (9th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983).

Golden State thereafter amended its complaint to allege a violation of the Sherman Act by the City. The district court granted summary judgment against Golden State on the grounds that the City was immune from antitrust liability. *Golden State,* 563 F.Supp. 169, 172 (C.D.Cal.1983). We affirmed. *Golden State,* 726 F.2d 1430 (9th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 1865, — L.Ed.2d — (1985). We denied the petition for rehearing and en banc review. The district court then granted summary judgment against Golden State on its remaining claims. Golden State appealed.

Two questions are presented for our *de novo* review:

Was the City preempted from refusing to renew Golden State's taxicab franchise?

Did Golden State allege a sufficient constitutionally protected property interest to justify a trial on the question of a due process violation?

We answer both questions negatively and affirm.

## PREEMPTION ISSUE

The Supreme Court has articulated two distinct bases for preemption of state action by the NLRA. The first, which is founded on the primary jurisdiction of the NLRB, preempts state action concerned with conduct that is at least arguably prohibited or protected by the Act. *See San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). The state action will not, however, be preempted if the conduct regulated is only a peripheral concern

of the Act or touches interests deeply rooted in local feeling and responsibility. *Id.* at 243–44, 79 S.Ct. at 778–79. A supplemental branch of preemption prohibits state action concerning conduct that was intended to be unregulated because it was considered a proper economic weapon for use by parties to a labor dispute. *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396 (1976).

The district court granted Golden State a preliminary injunction based upon its preemption claim. On interlocutory appeal, we held that the power of taxicab franchise renewal was a matter of such local interest that preemption "must rest upon 'compelling congressional direction.' " 686 F.2d at 760 (citation omitted). Finding no such evidence, we vacated the district court's grant.[1] Then, in opposition to the City's motion for summary judgment, Golden State introduced legislative history of an amendment to the NLRA and alleged that it demonstrated Congress' specific intent to preempt actions such as the City's. The district court found the legislative history unpersuasive and granted the City's motion.

Initially, Golden State argued on this appeal that the district court erred in finding that the legislative history cited by Golden State did not demonstrate a "compelling congressional direction" to preempt the City's action. Golden State now argues that application of the local interest exception to NLRA preemption in this case was inappropriate. We agree with Golden State. Because the district court's decision is supported by other grounds, however, we affirm its grant of summary judgment on the preemption issue.[2]

The City's renewal of taxicab franchises was held to fall within the local interest exception because we found NLRA preemption harder to infer when a state is regulating such a " 'traditionally local matter' " as the "use of streets and highways." 686 F.2d at 760 (citing *Allen-Bradley Local No. 1111 v. Wisconsin Employment Relations Board,* 315 U.S. 740, 749, 62 S.Ct. 820, 825, 86 L.Ed. 1154 (1942), quoted in *Lodge 76,* 427 U.S. at 136 n. 2, 96 S.Ct. at 2551 n. 2). Our reliance on *Allen-Bradley* was misplaced.[3] That case dealt with a violent and unruly picket outside of the employer's factory in which the strikers were blocking the streets and threatening

---

**1.** We did uphold the district court's determination that the non-renewal of Golden State's franchise altered the balance of economic power in the labor dispute, noting that it was supported by "ample evidence in the record." 686 F.2d at 759. For this reason, we cannot agree with Judge Norris' suggestion, in his concurrence, that summary judgment was appropriate because Golden State has failed to present any evidence supporting its claim that the City's action affected its bargaining power. To affirm the trial court's grant of summary judgment to the city, we must view the evidence in the light most favorable to Golden State. *See Fruehauf Corp. v. Royal Exchange Assurance of America,* 704 F.2d 1168, 1171 (9th Cir.1983). The district court previously found that the City's action did affect Golden State's bargaining power. We cannot disregard that finding.

**2.** Golden State also contends that the local interest exception only applies to preemption based on the primary jurisdiction of the NLRB. Golden State thus argues that the local interest exception is inapposite, because this case involves substantive rights to economic self-help under the NLRA. In the past, the Supreme Court has applied the local interest exception to matters of

substantive economic rights. *See, e.g., Lodge 76,* 427 U.S. at 136–37, 154–55, 96 S.Ct. at 2551–52, 2560. Recent Supreme Court decisions, however, indicate that this exception is not appropriate in cases involving substantive rights. *See, e.g., Brown v. Hotel & Restaurant Employees & Bartenders Int'l Union Local 54,* — U.S. —, 104 S.Ct. 3179, 3187, 82 L.Ed.2d 373 (1984). Because we affirm on another ground we do not address this issue.

**3.** The City argues that our prior decision on the preliminary injunction is law of the case and reconsideration of it is barred. This assertion is wrong. As a general rule, decisions on preliminary injunctions do not constitute law of the case and "parties are free to litigate the merits." *City of Anaheim v. Duncan,* 658 F.2d 1326, 1328 n. 2 (9th Cir.1981). In addition, we may exercise our discretion to hear "contrary controlling authority on the applicable issues of law." *Sidney v. Zah,* 718 F.2d 1453, 1458 (9th Cir.1983) (citations omitted). This appeal is described by both of these propositions. We therefore reject the City's contention.

working employees. Moreover, the Supreme Court has strictly limited the local interest exception to matters involving violence and tort actions, such as libel and intentional infliction of emotional distress. *See, e.g., New York Telephone Co. v. New York State Labor Dep't,* 440 U.S. 519, 550–51, 99 S.Ct. 1328, 1346, 59 L.Ed.2d 553 (1979) (Blackmun, J., joined by Marshall, J., concurring in plurality opinion); *Lodge 76,* 427 U.S. at 136, 96 S.Ct. at 2551 (focus of local interest exception is the "[p]olicing of actual or threatened violence ... or destruction of property"). There are no allegations of violent, destructive, or tortious conduct in this case.

The First Circuit has extended the local interest exception to hospital cost containment legislation. *See Massachusetts Nursing Ass'n v. Dukakis,* 726 F.2d 41, 44 (1st Cir.1984). That decision, however, was also based upon strong congressional support for such programs and the indirect effect the challenged legislation had on labor relations. *Id.* at 43–45. Supreme Court precedent and the distinguishing circumstances in *Dukakis* cause us to conclude that the extension of the local interest exception to this case was unwarranted. This conclusion does not, however, resolve the matter.

■ The peripheral concern exception to labor preemption recognizes that the NLRA "does not withdraw 'from the States ... power to regulate where the activity regulated [is] a merely peripheral concern of the [act].'" *Lodge 76,* 427 U.S. at 137, 96 S.Ct. at 2551–52 (footnote omitted). This exception allows states to regulate matters when there is only a remote possibility of conflict between such regulation and national labor policy. *See id.* at 137–38 n. 3, 96 S.Ct. at 2551–52 n. 3. Preemption is thus required only when a state "enforce[s] statutes or rules of decision rest-

ing upon its views concerning accommodation of the same interests" focused upon by the NLRA. *Lodge 76,* 427 U.S. at 140 n. 4, 96 S.Ct. at 2553 n. 4 (quoting Cox, *Labor Law Preemption Revisited,* 85 Harv.L. Rev. 1337, 1352 (1972). Similarly, in *New York Telephone,* the Court held that New York's unemployment compensation program, which authorized payments to striking workers, was not preempted, in part, because the program was not intended to regulate labor relations "but instead to provide an efficient means of insuring employment security." 440 U.S. at 533, 99 S.Ct. at 1337 (Stevens, J., plurality opinion).[4] Nothing in the record indicates that the City's refusal to renew or extend Golden State's franchise until an agreement was reached and operations resumed was not concerned with transportation. Such a concern does not implicate or conflict with federal labor policy. There is therefore no basis to preempt the City's action.

In any regulated industry, a myriad of governmental decisions from rate-setting to the establishment of safety standards are bound to affect labor relations in that industry. If local regulation of public utilities is not to be unduly restricted, only actions seeking to directly alter the substantive outcome of a labor dispute should be preempted. *Cf. Dukakis,* 726 F.2d at 45; *Amalgamated Transit Union, Div. 819 v. Byrne,* 568 F.2d 1025, 1042 (3d Cir. 1977) (en banc) (Adams, J., dissenting). The City did not attempt to dictate terms of the collective bargaining agreement or alter the substantive outcome of the dispute. It merely insisted upon resolution of the dispute as a condition to franchise renewal. The City's refusal to renew Golden State's franchise is therefore not preempted by the NLRA.

### DUE PROCESS ISSUE

■ Golden State contends that the assurances made by various City officials re-

---

**4.** Although the Supreme Court has indicated that the local interest exception does not apply to preemption based upon substantive economic rights, *see supra* footnote 2, the considerations represented by the peripheral concern exception are not similarly limited. There is no doubt that the focus of the peripheral concern excep-

tion on the potential for conflict between state regulation and federal labor policy is an appropriate consideration under both branches of preemption. *See, e.g., Brown,* — U.S. —, 104 S.Ct. at 3187 (examining state regulation of union officials for possible conflict with employees' rights); *see also New York Telephone.*

garding franchise renewal constitute a mutual understanding sufficient to create a constitutionally protectable property interest under the *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) formulation. There is no evidence of the mutual understanding necessary to establish such an interest; at most, Golden State had a unilateral expectation of renewal. 686 F.2d at 760–61.

Golden State's assertion that *Vail v. Board of Education of Paris Union School District 95*, 706 F.2d 1435 (7th Cir. 1983), *aff'd per curiam*, —— U.S. ——, 104 S.Ct. 2144, 80 L.Ed.2d 377 (1984) establishes the sufficiency of its interest in franchise renewal is mistaken. In that case, the school board voted to assure the plaintiff that his one-year coaching contract would be renewed for a second year. 706 F.2d at 1436. The school board was the body authorized to make hiring decisions and their informal assurance was thus sufficient to bind the school district. In the present case, franchise renewal is a legislative act, *see, e.g., Monarch Cablevision v. City Council*, 239 Cal.App.2d 206, 210, 48 Cal.Rptr. 550, 553 (1966), and all legislative power is vested in the City Council to be exercised by ordinance. Los Angeles City Charter § 21. The City officials that allegedly promised Golden State "automatic" franchise renewal had no authority to act for the City and therefore no mutual understanding was created on the basis of their representation.

Golden State, relying on *Doran v. Houle*, 516 F.Supp. 1231 (D.Mont.1982), contends that licensees have a protected property interest in their license renewals. We vacated the *Doran* decision on precisely the grounds that Golden State cites it for. *See* 721 F.2d 1182 (9th Cir.1983), *cert. denied*,

—— U.S. ——, 104 S.Ct. 2152, 80 L.Ed.2d 538 (1984). In that decision, the federal government's termination of the plaintiff veterinarians' permits to use testing kits to check for a contagious disease in cattle was upheld. There was no showing of a mutual agreement to contradict the otherwise unfettered discretion the government retained over the use of the kits. 721 F.2d at 1186. We held that the "mere fact a person has received a government benefit in the past, even for a considerable length of time, does not, without more, rise to the level of a legitimate claim of entitlement." *Id.* (citation omitted).

Affirmed.

NORRIS, Circuit Judge, concurring in part and concurring in the judgment.

I concur in the judgment of the court affirming the district court's grant of summary judgment for the City. I also concur in that part of the majority opinion holding that Golden State's due process claim must fall because Golden State has failed to establish that a constitutionally protectable property interest was created.

I write separately, however, because I believe it is wholly unnecessary to the disposition of this appeal to address Golden State's legal argument that the NLRA prohibits a City from refusing to renew Golden State's franchise under what Golden State alleges to be the facts of this case.[1] Golden State's preemption argument is constructed on two factual premises: (1) that the City's purpose in refusing to renew the franchise was to assist the Teamsters in their labor dispute with Golden State, and (2) that the effect of the City's refusal to renew the franchise was to destroy Golden State's economic ability to resist the strike.[2] Golden State cites no evidence,

---

1. Because I view the majority's discussion of the preemption issue as dicta, I refrain from commenting on what I perceive to be serious deficiencies in its analysis.

2. In short, Golden State's argument is that the City's refusal to renew its franchise is preempted by the NLRA because it constituted an at-

tempt to dictate the terms of a collective bargaining agreement or because it otherwise altered the relative bargaining powers of the parties to a labor dispute. As support for this argument, Golden State relies on the line of cases recognizing that certain state actions that alter the relative bargaining positions of labor and management may "frustrate effective imple-

however, that gives rise to a triable issue of fact with respect to either of these factual allegations. As a result, we should hold that the City is entitled to summary judgment on the narrow ground that Golden State has offered no substantial evidence to support its critical factual allegations. It is totally unnecessary for us to go further and discourse on the legal question of the possible preemptive effect of the NLRA on the City's action.

mentation of the Act's processes" and therefore be preempted. *E.g. Machinists v. Wisconsin*
*Emp. Rel. Comm'n*, 427 U.S. 132, 147–48, 96 S.Ct. 2548, 2556–57, 49 L.Ed.2d 396 (1976).