CHURCH OF SCIENTOLOGY
INT'L, Plaintiff,

v.

James G. KOLTS, Defendant.

No. CV 93–1390–RSWL (EEx).

United States District Court,
C.D. California.

Feb. 16, 1994.

William T. Drescher, Calabassas, CA, Kendrick L. Moxon, Helena K. Kobrin, Bowles & Moxon, Hollywood, CA, for the plaintiff.

Terree A. Bowers, U.S. Atty., George H. Wu, AUSA, Asst. Chief, Civ. Div., Los Angeles, CA, for the defendant.

## MEMORANDUM OPINION

LEW, District Judge.

Defendant James G. Kolts in the above captioned action has moved to dismiss Plaintiff's claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The matter was removed from the Court's law and motion calendar for disposition based on the filed papers pursuant to Federal Rule of Civil Procedure 78.

Having carefully considered all of the papers filed in support of and in opposition to Defendant's motions, the Court finds that this case is properly before this Court, and therefore Defendant's Motion to Dismiss for lack of subject matter jurisdiction is **DENIED**. Defendant's Motion to Dismiss for failure to state a claim is **GRANTED WITH PREJUDICE**.

## I. BACKGROUND

Defendant James G. Kolts ("Defendant Kolts") was appointed by James M. Ideman, United States District Court Judge for the Central District of California, to serve as the special master in two consolidated cases, *Religious Technology Center, et al. v. Scott, et al.*, No. CV 85–0711 JMI (Bx), and *Religious Technology Center, et al. v. Wollersheim, et*

al.; No. CV 85–7197 JMI(Bx) (the "Scott–Wollersheim cases"). Plaintiff, Church of Scientology International ("Plaintiff"), which is also the party plaintiff in the *Scott–Wollersheim* cases, contends that Defendant Kolts engaged in extrajudicial communications with a Time magazine reporter, Richard Behar, as well as FBI and IRS agents while serving as special master. In particular, Plaintiff alleges that Defendant Kolts agreed to act as a confidential source to Mr. Behar at a time when Mr. Behar was writing an article for Time magazine which Plaintiff claims was "a viciously negative article." [1] Plaintiff infers from these contacts that Defendant Kolts was biased, and therefore violated its constitutional rights. Defendant Kolts does not recall any such contact with Mr. Behar and apparently denies any extrajudicial contacts that might have prejudiced Plaintiff's case.

After Plaintiff discovered these extrajudicial contacts it brought a motion before Judge Ideman for recusal of Defendant Kolts based on the same alleged extrajudicial contacts that are the subject of this suit. Judge Ideman denied Plaintiff's motion holding that "it is patently obvious that the instant recusal motion is done for the purpose of delay and harassment, and because the motion is neither grounded in fact nor warranted by law, the Court HEREBY DENIES plaintiffs' recusal motion as to Special Master Kolts." *Religious Technology Center et al., v. Scott, et al.*, No. CV 85–711 at 2 (C.D.Cal. Feb. 18, 1993) (order by Judge Ideman). Apparently, Judge Ideman recused himself as the presiding judge over the *Scott–Wollersheim* cases on June 30, 1993.

Plaintiff subsequently filed the instant suit against Defendant Kolts alleging a violation of its due process rights and violation of Canons 3A(4) and 3A(6) of the Code of Conduct for United States Judges (the "Judicial Code").[2] Plaintiff seeks a declaratory judg-

---

1. That article is the subject of a federal defamation suit filed by Plaintiff in New York. *See Church of Scientology Int'l v. Time Warner, Inc., et al.*, 806 F.Supp. 1157 (S.D.N.Y.1992).

2. Canon 3A(4) provides as follows:
 A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law,

and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and

ment pursuant to 28 U.S.C. § 2201 stating that Defendant Kolts violated its Fifth Amendment due process rights and violated the two provisions of the Judicial Code. Plaintiff also seeks an injunction, as necessary and proper relief pursuant to 28 U.S.C. § 2202, ordering Defendant Kolts to disclose the content of all of his extrajudicial communications regarding the *Scott–Wollersheim* cases or Plaintiff, and that he disgorge any fees paid to him since he first engaged in such activities.[3]

On May 3, 1993, Defendant Kolts moved to dismiss the instant case on the grounds that the Court lacked subject matter jurisdiction and that Plaintiff had failed to state a claim upon which relief could be granted. This Court granted Defendant's motion on June 14, 1993 with twenty days leave to amend. Plaintiff subsequently filed a First Amended Complaint on July 6, 1993. Defendant Kolts then filed the current Motion to Dismiss Plaintiff's claims for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6).

## II. DISCUSSION

Defendant Kolts asserts that Plaintiff's amended Complaint should be dismissed because this Court lacks subject matter jurisdiction and is barred by the doctrine of sovereign immunity. In addition, Defendant Kolts moves for dismissal on the grounds that Plaintiff cannot state a claim upon which relief can be granted. In particular, Defendant Kolts contends that the Judicial Code does not create a private cause of action, that Plaintiff has failed to allege sufficient facts to state a claim for violation of its due process rights, that Plaintiff cannot seek declaratory and injunctive relief under 28 U.S.C. § 2201, that Plaintiff's suit is merely a collateral attack on Judge Ideman's denial of Plaintiff's

motion to recuse, and finally, that Defendant Kolts is immune from suit by the doctrine of absolute quasi-judicial immunity.

## A. DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION.

Plaintiff bases its subject matter jurisdiction on 28 U.S.C. § 1331 for violation of its due process rights guaranteed by the Fifth Amendment to the United States Constitution as well as violation of Canons 3A(4) and 3A(6) of the Code of Conduct for United States Judges. In addition, Plaintiff asserts that this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1361 for "declaratory relief sought in the nature of mandamus to compel an officer of the United States to perform a duty owed to the plaintiff." (First Am.Compl. ¶ 2.) Defendant Kolts opposes each of these assertions of jurisdiction and contends that Plaintiff's suit against Defendant Kolts is actually a suit against the United States, and is therefore barred by the doctrine of sovereign immunity.

### 1. *Jurisdiction Pursuant to 28 U.S.C. § 1331.*

█ If a court lacks subject matter jurisdiction the court must dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(1). Although Defendant Kolts is the moving party, Plaintiff is the party seeking to invoke this Court's jurisdiction. Accordingly, Plaintiff bears the burden of establishing subject matter jurisdiction. *See Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989) ("A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.").

█ Plaintiff asserts that this Court has jurisdiction over the instant case pursuant to

---

affords the parties reasonable opportunities to respond.
*Code of Conduct for United States Judges* Canon 3A(4) (1992).
 Canon 3A(6) provides:
 A judge should abstain from public comment about a pending or impending proceeding in any court.... This subsection does not prohibit judges from making public statements in

the course of their official duties or from explaining for public information the procedures of the court.
*Code of Conduct for United States Judges* Canon 3A(6) (1992).

**3.** Plaintiff claims that it has paid in excess of $200,000 to Defendant Kolts in special master fees.

28 U.S.C. § 1331. Because Plaintiff states a claim arising under the Constitution (Plaintiff contends its Fifth Amendment due process rights were violated), Plaintiff's complaint meets the requirement of "arising under" the Constitution required by 28 U.S.C. § 1331. The United States Supreme Court has held that a cause of action exists against federal officers for direct constitutional torts claims. *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *see also Daly–Murphy v. Winston,* 820 F.2d 1470, 1477 (9th Cir.1987). Thus, this Court has jurisdiction under 28 U.S.C. § 1331. *See The Presbyterian Church v. United States,* 870 F.2d 518, 524 (9th Cir. 1989) (holding that the court had jurisdiction over a claim for declaratory relief because plaintiff alleged a violation of the First and Fourth Amendments); *Seltzer v. Foley,* 502 F.Supp. 600, 601 (S.D.N.Y.1980) (holding that subject matter jurisdiction existed over a claim for declaratory and injunctive relief because plaintiffs alleged that a government official had acted unconstitutionally to deprive them of a liberty interest and procedural due process).

■ The parties spend an inordinate amount of time in their submitted papers arguing whether the Code of Conduct for United States Judges constitutes a "law" that would confer subject matter jurisdiction on the Court pursuant to 28 U.S.C. § 1331. Because Plaintiff alleges a violation of the Constitution in its complaint, the parties' discussion seems academic. However, while the Code may have the force of law, it does not seem to provide a grant of jurisdiction. *Cf. Port Drum Co. v. Umphrey,* 852 F.2d 148, 149–50 (5th Cir.1988) (holding that Rule 11 of Federal Rules of Civil Procedure is not a federal law for purposes of Section 1331 jurisdiction, but is "instead a regulator of a party's proceedings once that party is in federal court pursuant to another, independent jurisdictional grant"); *Johnson v. Thomas,* 932 F.2d 747, 747 (8th Cir.1991) (per curiam) (holding that the Local Rules of the United States District Court for the District of Minnesota addressing attorney disci-pline do not confer subject matter jurisdiction on federal courts); *Taylor v. Diznoff,* 633 F.Supp. 640, 642 (W.D.Pa.1986) (holding that the Code of Professional Responsibility for lawyers does not confer subject matter jurisdiction on the federal courts).

Finally, Defendant Kolts contends that the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, as well as an action in the nature of mandamus, 28 U.S.C. § 1361, do not confer jurisdiction upon the federal courts to hear a claim for relief. This argument, however, is moot given that this Court holds that subject matter jurisdiction already exists pursuant to 28 U.S.C. § 1331 by virtue of Plaintiff's due process claim.

### 2. *The Doctrine of Sovereign Immunity.*

■ The United States, as a sovereign, is immune from suit except when it consents to be sued. *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548, 561 (1990). Waivers of the Government's immunity must be "unequivocally expressed" to be effective. *United States v. Nordic Village, Inc.,* — U.S. —, —, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181, 187 (1992). Moreover, the Government's consent to be sued must be " 'construed strictly in favor of the sovereign' " and " 'not enlarge[d] . . . beyond what the language requires.' " *United States Department of Energy v. Ohio,* — U.S. —, —, 112 S.Ct. 1627, 1633, 118 L.Ed.2d 255, 266 (1992) (citations omitted); *Nordic Village,* — U.S. at —, 112 S.Ct. at 1015.

■ The Supreme Court has long held that while sovereign immunity prevents suits against the government as an entity, it does not, in all instances, prevent suits against government officers in their individual capacities. *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 686–87, 69 S.Ct. 1457, 1459–60, 93 L.Ed. 1628 (1949). However, the doctrine of sovereign immunity cannot be avoided merely by naming officers and employees of the United States as defendants. *Id.* at 687, 69 S.Ct. at 1460. When a federal officer is sued in his or her representative capacity, the suit is actually a suit against the United States and it is barred by sovereign immunity. *United States v. Yaki-*

*ma Tribal Court*, 806 F.2d 853, 858 (9th Cir.1986), *cert. denied* 481 U.S. 1069, 107 S.Ct. 2461, 95 L.Ed.2d 870 (1987). A suit is against the sovereign if the "'judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Id.* (quoting *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 908, n. 11, 79 L.Ed.2d 67, 79 n. 11 (1984)). However, sovereign immunity clearly will not protect an officer from liability when actions of an officer are *ultra vires* his designated authority. *Dugan v. Rank*, 372 U.S. 609, 621–22, 83 S.Ct. 999, 1007, 10 L.Ed.2d 15, 24 (1963). Actions are *ultra vires* when: (1) the official's act is beyond the limits of his statutorily designated authority, (2) the official is acting pursuant to an unconstitutional statute, or (3) the official himself commits an unconstitutional act or deprives another of a federal right. *Pena v. Gardner*, 976 F.2d 469, 474 (9th Cir.1992) (concurring opinion); *see also Dugan*, 372 U.S. at 621–22, 83 S.Ct. at 1007. Courts generally hold that suits that charge federal officials individually with unconstitutional acts are not barred by sovereign immunity. *Yakima Tribal Court*, 806 F.2d at 859 (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)). In these *ultra vires* situations, the officer's actions can be made the basis of a suit for specific relief against the officer as an individual. *Id.; see also Larson*, 337 U.S. at 687, 69 S.Ct. at 1460; *Tashima v. Administrative Office of the United States Courts*, 719 F.Supp. 881, 887 (C.D.Cal.1989), *aff'd*, 967 F.2d 1264 (9th Cir.1992).

### a. *Whether Defendant Kolts' Actions Were Ultra Vires His Authority.*

█ Because Plaintiff alleges in its complaint that Defendant Kolts violated its right to due process of law, Plaintiff's claim falls within one of the exceptions to the general rule protecting government officials from liability under the doctrine of sovereign immunity. Because the government has no power to confer on Defendant Kolts the authority to act unconstitutionally, an allegation that De- fendant Kolts acted in an unconstitutional manner, or beyond his delegated powers, is a suit against Defendant Kolts in his personal or individual capacity. Therefore, Plaintiff's suit for declaratory or injunctive relief against Defendant Kolts is based on alleged unconstitutional acts that are *ultra vires* his designated authority.

### b. *Whether the Relief Sought Which is Nominally Addressed to the Officer is Actually Relief Against the Sovereign.*

It is well settled that the federal government itself cannot be sued for constitutional violations because of the doctrine of sovereign immunity. *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Thus, "a suit may fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested can not be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property." *Id.* at 691 n. 11, 69 S.Ct. at 1462 n. 11. Thus, an analysis of the relief sought by Plaintiff is also required.

█ In this case, Defendant Kolts is an officer or official of the United States. As a special master, Defendant Kolts is an officer of the court appointed pursuant to Federal Rule of Civil Procedure 53(a) & (c). *See In re Joint Eastern and Southern Districts Asbestos Litigation*, 737 F.Supp. 735, 742 (E. & S.D.N.Y.1990), *aff'd in part* and *rev'd in part*, 971 F.2d 831 (2d Cir.1992) (stating that special master is an officer of the court). Plaintiff asserts that although Defendant Kolts is a government officer, the requested remedies will not impinge upon the government's treasury or administration because it seeks only: a declaration that the Defendant Kolts acted extrajudicially, an order requiring the Defendant Kolts to disclose the extent of his conversations about the case and its parties, and an order requiring Defendant Kolts to disgorge the money that Plaintiff has already paid to Defendant Kolts to serve

as a special master. Defendant Kolts, however, argues that the relief requested by Plaintiff will interfere with the public administration because an order forcing Defendant Kolts to submit to discovery while presiding over the *Scott–Wollersheim* cases would clearly be disruptive.

The relief sought by Plaintiff would not impinge upon the government's treasury because any special master fees ordered to be repaid would come directly from Defendant Kolts' own pocket, not out of the government treasury. In addition, ordering Defendant Kolts to disclose any discussions or contacts he had regarding the *Scott–Wollersheim* cases or otherwise submitting to discovery on the issue of the extrajudicial communications would likely be uncomfortable for Defendant Kolts, but clearly would not be aimed at the government or require the government to take any action on its own. While the relief requested might cause delay or some disruption in the *Scott–Wollersheim* cases, such a disruption does not reach a level where the Court must hold that the relief is actually aimed at the sovereign.

There is scant support in the cases for carrying the effect-on-the-government analysis as far as Defendant Kolts suggests in his moving papers. While all suits against government officers will have some deterrent and disruptive effect on the administration of government, the Supreme Court has not held that such an inevitable disruption as exists in this case rises to a level where sovereign immunity is implicated. Instead, the Court has followed a more refined path of examining the relief sought against the officer and determining whether that relief is actually against the government. The long term effects of that relief have never been a part of the test. Thus, this Court does not find that the relief sought against Defendant Kolts is actually relief against the sovereign, and therefore the doctrine of sovereign immunity does not bar plaintiff's suit against Defendant Kolts.

Defendant Kolts also contends that the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 as well as a mandamus action under 28 U.S.C. § 1361, do not act as an express waiver of the government's sovereign immunity. Given that this Court holds that the exception for allegations of a constitutional violation apply in this case, the issue regarding Government waiver of sovereign immunity is not relevant.

## B. DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Defendant Kolts asserts that this Court should dismiss this action because Plaintiff has failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Kolts' contentions include: that the Judicial Code does not provide a private right of action for violations of its provisions; that even if the Judicial Code does create a cause of action, the Complaint fails to allege a violation of the Judicial Code; that Plaintiff cannot state a claim for violations of its due process rights; that Plaintiff cannot establish a basis for declaratory relief, injunctive relief, or the return of fees; that Plaintiff's suit is essentially a collateral attack on Judge Ideman's recusal order; and that the present action is barred by the doctrine of absolute quasi-judicial immunity.

In a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987); *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981). A court need not, however, accept conclusory allegations or unreasonable inferences at face value. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.), *cert. denied* 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981). A complaint should not be dismissed with prejudice for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957); *see also NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir.1986).

## 1. Whether the Code of Conduct for U.S. Judges Creates A Private Cause of Action.

■ The parties vigorously dispute whether the Code of Conduct for United States Judges provides a private cause of action. The Judicial Code clearly does not provide an *express* private right of action, and Plaintiff has not cited a single case which directly holds that the Judicial Code creates a private cause of action. Thus, this issue appears to be one of first impression. In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court stated a four-factor test to be applied in ascertaining whether a private right of action is implied in a statute or regulation when not expressly stated in the text.[4] The Court stated the test as follows:

> First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted'. . . . Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78, 95 S.Ct. at 2088.

As to the first part of the *Cort* test, clearly, Plaintiff is not a member of the class for whose "especial" benefit the statute was enacted. The Judicial Code was created to set standards for judicial conduct in order to uphold "the integrity and independence of the judiciary." *Code of Conduct for United States Judges* Canon 1 (1992). It was, in essence, created for use by Judges in conforming their conduct to standards which would further the administration of justice. It was not created to remedy injured third parties.[5] Second, there is no clear legislative intent to create a private right of action in the Judicial Code. Plaintiff's only evidence that the Judicial Conference intended the Code to provide a private right of action is the fact that the Judicial Conference adopted much of the wording in the ABA Code of Conduct but did not include the ABA preamble, which states that the ABA Code "did not purport to create any private right of action." *See Code of Judicial Conduct,* 69 F.R.D. 273 (1973) *as amended through* (1975). However, if the Judicial Conference participants had intended to so expand litigation against judges and essentially restrict the long standing doctrine of absolute immunity, surely they would have provided a clearer indication of that intent. Third, it would be inconsistent with the underlying purpose of the legislative scheme of the Judicial Code to imply a private right of action. In fact, to imply a private cause of action is problematic. Such a rule would be extremely disruptive to the orderly progression of cases through the court system. Judges would be inhibited in their judicial actions and perhaps even in their decision-making by the threat of suit for violations of the Judicial Codes, many of which are only recommendations, not mandatory requirements. Thus, allowing a private right of action would not further an independent judiciary.

A holding against the existence of a private cause of action is further supported by analogizing the Judicial Code to the Federal Rules of Civil Procedure. The Fifth Circuit has held that Rule 11 of the Federal Rules of Civil Procedure does not create a separate, private right of action. *Port Drum Co. v. Umphrey,* 852 F.2d 148, 149–50 (5th Cir. 1988). While not controlling, this Court is

---

**4.** The Judicial Code is technically neither a "statute" nor an agency "regulation," so the applicability of the *Cort* four-factor test in this case is in doubt. However, given the lack of case law on the subject, this Court holds that the *Cort* test is relevant in determining the issue now before this Court.

**5.** The commentary to Canon 1 further supports this Court's determination that Plaintiff is not a member of the class for which the Judicial Code was created. The commentary states that "the Code is not designed or intended as a basis for civil liability or criminal prosecution. Finally, the purpose of the Code would be subverted if the Code were invoked by lawyers for mere tactical advantage in a proceeding." *Code of Conduct for United States Judges* Canon 1 commentary (1992).

persuaded by the holding in Port Drum. Moreover, after reviewing the four-factor test in Cort, this Court finds that the Judicial Code does not create a private right of action.

For the foregoing reasons, this Court hereby **GRANTS WITH PREJUDICE** Defendant's Motion to Dismiss Plaintiff's First and Second Claims for Relief arising under violations of the Judicial Code. Given that no private right of action exists for violations of the Judicial Code, Plaintiff can state no facts which would create a cause of action. Thus, without an underlying claim, Plaintiff has no right to a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 as it relates to the Judicial Code.

### 2. Whether Plaintiff's Complaint States A Claim for Violation of Its Due Process Right to An Impartial Tribunal.

 No federal statute authorizes federal courts to hear suits or give relief against federal officers who violate the Constitution of the United States. However, the Supreme Court has long held that federal officers may be sued for declaratory or injunctive relief to prevent future infringements of federal laws. See, e.g., Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). The Supreme Court also extended the right to sue for damages in the landmark decision of Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In Bivens, the Supreme Court held that it would infer a cause of action for damages directly from certain constitutional provisions. Thus, regardless of whether Plaintiff is suing for damages or injunctive relief (and this issue is disputed by the parties), it is at least possible to state a cause of action for violation of due process rights.

Plaintiff alleges in its complaint that Defendant Kolts denied its right to due process of law guaranteed by the Fifth Amendment to the United States Constitution. Plaintiff contends that Defendant Kolts spoke extraju-

dicially with Mr. Behar and others regarding Plaintiff and the Scott–Wollersheim cases while Defendant Kolts was acting as a special master. Plaintiff further alleges that Mr. Behar was biased and held "habitually negative and prejudicial attitudes" toward Plaintiff. (First Am.Compl. ¶ 30.) Plaintiff infers from these alleged contacts that because Defendant Kolts "exposed" himself to such biased individuals, Defendant Kolts also must have been biased when issuing his rulings, and therefore has deprived Plaintiff of its constitutional right to "a fair trial in a fair tribunal ... [and the] guarantee that justice must satisfy the appearance of justice...." (First Am.Compl. ¶ 31.)

Defendant Kolts contends that Plaintiff has failed to allege sufficient facts to state a claim for violation of its constitutional right to due process of law. The first amended complaint merely contains allegations that Defendant Kolts may have been contacted by Mr. Behar and may have, "in a most casual way," discussed the Scott–Wollersheim cases. (First Am.Compl. ¶ 12.) Plaintiff also avers that Defendant Kolts may have been approached by agents of the IRS and FBI about the cases. Plaintiff does not allege that Defendant Kolts discussed the merits of its case with any of these alleged contacts nor that Defendant Kolts expressed his opinions about either of the parties in the cases before him. The complaint infers that Defendant Kolts was himself biased against Plaintiff at the time he issued rulings on Plaintiff's cases.[6]

In essence, Plaintiff's contention in this case is that any extrajudicial communication, irrespective of content, is sufficient to allege a violation of due process. However, if a judge or special master merely responded affirmatively to a reporter's inquiry as to whether a particular case was still pending or told a government agent what stage the litigation happened to be at, it would be unreasonable to assert that the judge had violated a party's due process rights. In fact, it must be conceded that a judicial officer has the

---

**6.** Either Plaintiff expects this Court to infer that Defendant Kolts was biased simply because he spoke with someone that may have been biased, or Plaintiff is alleging that its due process rights were violated simply by the appearance of impropriety, whether or not Defendant Kolts was in fact biased.

authority to explain to outsiders the procedures of the court. Based on the complaint, it appears that Plaintiff does not know what was said to Mr. Behar and the government agents, assuming that these contacts did indeed occur. This Court is very reluctant to allow Plaintiff to force Defendant Kolts to defend against an inference of prejudice wholly unsupported by factual allegations.[7]

However, the Supreme Court has held that while judicial fairness obviously requires an absence of *actual* bias in the adjudication of cases, the Court has also noted that "our system of law has always endeavored to prevent even the *probability* of unfairness." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) (emphasis added). The Court has further stated that in order for the judicial system "to perform its high function in the best way, 'justice must satisfy the *appearance* of justice.'" *Id.* (citations omitted) (emphasis added). While this Court does not interpret this expansive reading of the due process clause to mean that any appearance of impropriety is sufficient to violate the due process clause, for purposes of a 12(b)(6) motion to dismiss, an allegation of the appearance of impropriety is sufficient to survive the limited pleading requirements of Federal Rule of Civil Procedure 8.

### 3. *Whether Plaintiff's Due Process Claim is Proper for Declaratory Relief Pursuant to 28 U.S.C. § 2201.*

■ Assuming that Plaintiff has stated sufficient facts to allege a violation of its due process rights, Defendant Kolts also contends that Plaintiff's due process claim should be dismissed because it cannot be stated as a claim for declaratory relief under 28 U.S.C. § 2201. Section 2201 states that

[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and

effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

The Supreme Court has held that Section 2201 is "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant." *Public Service Commission of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952); *see also Green v. Mansour*, 474 U.S. 64, 72, 106 S.Ct. 423, 428, 88 L.Ed.2d 371, 379 (1985); *Alabama State Federal of Labor v. McAdory*, 325 U.S. 450, 462, 65 S.Ct. 1384, 1390, 89 L.Ed. 1725 (1945); *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Insurance Co.*, 791 F.2d 460, 462 (6th Cir. 1986). The propriety of issuing a declaratory judgment may depend upon equitable considerations and should be "'informed by the teachings and experience concerning the functions and extent of federal judicial power.'" *Green*, 474 U.S. at 72, 106 S.Ct. at 428 (citing *Public Service*, 344 U.S. at 243, 73 S.Ct. at 240).

■ If this Court were to issue a declaratory judgment and order the requested injunctive relief, it could greatly impede the orderly administration of justice. The Plaintiff has already attempted to recuse Defendant Kolts from his position as special master in the *Scott–Wollersheim* cases. Yet, in effect what Plaintiff is trying to accomplish in this suit for declaratory relief is the same result it failed to obtain in its motion for recusal. Although Plaintiff in this suit is not presently asking for Defendant Kolts' recusal, it has requested relief that, if granted, would have the result of forcing Defendant Kolts to recuse himself. Indeed, allowing a party who has been unsuccessful in a recusal motion to simply file a civil suit against that same judge or special master would be entirely disruptive to the judicial process. It would invariably create an adversarial relationship between the party to the underlying litigation and the judge or special master appointed to be an unbiased arbiter. Such a civil suit would require the judge or special master to recuse himself because of that

---

7. Surely such averments, wholly unsupported by evidence, could not survive a motion for summary judgment.

adversarial relationship. Moreover, Plaintiff is requesting that all fees paid to Defendant Kolts be returned to Plaintiff. Such a ruling would effectively prevent Defendant Kolts from serving as a special master because he would no longer be paid for his services. In effect, Plaintiff's requested ruling would do what it could not do in its recusal motion before Judge Ideman.

Additionally, Plaintiff's request for a declaratory judgment stating that Plaintiff's due process rights have been violated does not appear to encompass a proper situation for a declaratory judgment. Plaintiff does not request an injunction to prohibit future violations of its due process rights; nor does this Court believe such an injunction would be proper. As the Supreme Court noted in *Green · v. Mansour*, considerations of the function and extent of federal judicial power should be a factor in the Court's exercise of discretion when deciding whether a declaratory judgment is proper. 474 U.S. 64, 72–73, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985). Even if this Court issued a declaratory judgment stating that Plaintiff's due process rights were violated, such a ruling probably would not settle the controversy. Plaintiff would still have to seek a recusal motion before the presiding district court judge in the *Scott–Wollersheim* cases in order to prevent further violation of its due process rights. Moreover, Judge Ideman previously denied just such a motion after considering the same issues of extrajudicial communication raised by Plaintiff in this lawsuit.

In some circumstances, Plaintiff's request for an injunctive order as "further necessary or proper relief" pursuant to 28 U.S.C. § 2202 would be an appropriate remedy. The Supreme Court noted in *Green v. Mansour* that declaratory judgments are intended to remedy a "continuing violation of

federal law," and therefore would necessitate an occasion to issue an injunction. 474 U.S. at 73, 106 S.Ct. at 428. However, injunctive relief is awarded at the discretion of the district court and can only be given if there is a showing of inadequate remedies at law and of serious risk of irreparable harm. *Pulliam v. Allen*, 466 U.S. 522, 537, 104 S.Ct. 1970, 1978, 80 L.Ed.2d 565, 576 (1984). It appears that the main purpose of Plaintiff's lawsuit for declaratory judgment is to either rectify a past wrong (violation of its due process rights), or to effectively remove a judicial officer, both possibilities having ample remedies at law. If Plaintiff's purpose is the former, then a direct action for damages, by requesting repayment of over $200,000 in special master fees and for the costs of suit, is the better method of resolution. If Plaintiff's purpose is the latter, then Plaintiff could follow established procedures for rehearing of specific motions or removal of a judicial officer. Where litigation is pending before a federal district court and the party believes that the judge (or as here the special master) has taken improper and prejudicial action, several avenues for relief are available: (1) a party can ask the judge to reconsider his ruling (Local Rule 7.16); (2) a party can move to recuse the judge (28 U.S.C. §§ 144, 455); (3) a party can seek mandamus relief from a Court of Appeals (28 U.S.C. § 1651);[8] or (4) a party can seek to certify the issue and take an immediate appeal (28 U.S.C. § 1292).

Even if Plaintiff's purpose is only to obtain a ruling that Defendant Kolts has violated its due process rights, such a ruling would in effect be a collateral attack on Judge Ideman's ruling that recusal was not proper, and therefore such a claim would not

---

8. Although Plaintiff's complaint cites 28 U.S.C. § 1361, jurisdiction for writ of mandamus, as a basis for subject matter jurisdiction, it is not clear whether Plaintiff brings its action for a declaratory judgment and other relief in the form of a petition for a writ of mandamus. This Court does not decide the question of whether such a writ is appropriately brought before this Court because Plaintiff does not assert this issue anywhere else in its complaint or submitted papers. Consequently, this Court will not assume on the

Plaintiff's behalf that its complaint is a petition for writ of mandamus. *See* 28 U.S.C. § 1651; Fed.R.App.P. 21. However, this Court will refer Plaintiff to the Ninth Circuit's ruling in *Mullis v. United States Bankruptcy Court, Dist. of Nevada*, 828 F.2d 1385 (9th Cir.1987), where the court held that "[a] district court lacks authority to issue a writ of mandamus to another district court." *Id.* at 1393 (citing *Lewis v. Green*, 629 F.Supp. 546, 553 (D.D.C.1986)).

be properly before this Court.[9] The Ninth Circuit has held that a collateral attack disguised as a suit for declaratory judgment of due process rights is improper. In *Mullis v. United States Bankruptcy Court, District of Nevada*, 828 F.2d 1385 (9th Cir.1987), the Ninth Circuit held that

> [b]y styling his or her complaint as a *Bivens* injunctive action, a federal court litigant could circumvent the limitations on direct appeal, including interlocutory appeal, and for extraordinary writs. To allow a district court to grant injunctive relief ... would be to permit, in effect, a 'horizontal appeal' from one district court to another or even a 'reverse review' of a ruling of the court of appeals by a district court.

*Id.* at 1392–93.

The court added that "[s]uch collateral attacks on the judgments, orders, decrees or decisions of federal courts are improper." *Id.* at 1393 (citing *Brown v. Baden*, 815 F.2d 575, 576–77 (9th Cir.1987) (other citations omitted)).

Thus, this Court exercises its discretion by denying Plaintiff's due process claim for declaratory judgment pursuant to 28 U.S.C. § 2201. Moreover, the Ninth Circuit's holding in *Mullis* supports Defendant Kolts' contention that it would also be improper for this Court to hear a claim for damages or injunctive relief if Plaintiff were allowed to amend its Complaint.

### 4. Whether Plaintiff's Claims Are Barred by the Doctrine of Absolute Quasi–Judicial Immunity.

■ Defendant Kolts also contends that this case must be dismissed because he is immune from suit under the doctrine of absolute quasi-judicial immunity. Absolute immunity may properly be raised in support of a motion to dismiss for failure to state a claim. *See Imbler v. Pachtman*, 424 U.S. 409, 416, 96 S.Ct. 984, 988, 47 L.Ed.2d 128, 135 (1976); *Mullis v. United States Bankruptcy Court, District of Nevada*, 828 F.2d 1385, 1387 n. 6 (1987).

■ Judges are absolutely immune from civil liability for *damages* for their judicial acts. *Mireles v. Waco*, —— U.S. ——, ——, 112 S.Ct. 286, 287, 116 L.Ed.2d 9, 13 (1991); *Mullis*, 828 F.2d at 1388. In addition, the judicial or quasi-judicial immunity available to federal officers in suits involving claims for damages, extends to actions for declaratory, injunctive, and other equitable relief. *Mullis*, 828 F.2d at 1394.[10]

9. Although not explicitly asserted by Defendant Kolts, the doctrine of collateral estoppel might bar this Court's adjudication of this suit, and therefore would be an alternative ground for granting Defendant Kolts' current Motion to Dismiss. Collateral estoppel or issue preclusion "bars the relitigation of issues actually adjudicated in previous litigation between the same parties." *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir.1992) (citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4402 (1981)); *see also Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). The absence of a due process violation can be inferred from Judge Ideman's denial of Plaintiff's motion for recusal. Judge Ideman would not have denied the recusal motion had he found that Defendant Kolts violated Plaintiff's due process right to an impartial tribunal. Moreover, courts have clearly held that a denial of a motion to recuse necessarily entails a holding that the movant's due process rights were not violated. *United States v. Int'l Business Machs. Corp. (In re Int'l Business Machs. Corp.)*, 618 F.2d 923, 932 n. 11 (2d Cir.1980) (" [I]t would be anomalous to hold that a claim under the [recusal] statutes insufficient on its merits could nevertheless satisfy the constitutional standard."); *United States v. Ahmed*, 788 F.Supp. 196, 205 (S.D.N.Y.) (holding that "[a] rejection of defendant's claims under [recusal] sections 144 and 455 '*a fortiori* defeats his due process allegations.' "), *aff'd*, 980 F.2d 161 (2d Cir.1992). The parties do not state whether a due process issue was explicitly raised in the recusal motion before Judge Ideman, but it is clear from the parties' submitted papers that the same claims of extrajudicial contacts which are the basis of this due process cause of action were raised in the recusal motion.

10. It is, however, established that judicial immunity does not bar declaratory or injunctive relief in actions against state judges under 42 U.S.C. § 1983. *Pulliam v. Allen*, 466 U.S. 522, 541–42, 104 S.Ct. 1970, 1980–81, 80 L.Ed.2d 565 (1984); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir.1986) (en banc). While Plaintiff argues that *Mullis* was wrongly decided in light of policy and dicta found in the *Pulliam case*, this Court is obligated to follow the Ninth Circuit's clear statement of the law on the specific issue of absolute immunity for federal judicial officers in non-Section 1983 claims.

■ In a case involving parties related to this suit, *Atkinson–Baker & Assoc., Inc. v. Kolts,* 7 F.3d 1452, 1454–55 (9th Cir.1993), the Ninth Circuit held that absolute quasi-judicial immunity extends to special masters appointed by district court judges. The court reasoned that, " 'When judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges—that is, because they too, exercise a discretionary judgment as part of their function.' " *Id.* at 1454 (quoting *Antoine v. Byers & Anderson, Inc.,* — U.S. —, —, 113 S.Ct. 2167, 2171, 124 L.Ed.2d 391, 399 (1993) (citations and quotations omitted)). Such a conclusion is warranted by analogous court rulings which have extended absolute immunity to bankruptcy trustees,[11] court-appointed guardians ad litem,[12] court-appointed commissioners,[13] court-appointed receivers,[14] and court-appointed conservators of estates.[15] Furthermore, courts generally extend absolute quasi-judicial immunity to nonjudicial officials whose official duties have an integral relationship with the judicial process. *See e.g., Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Ashbrook v. Hoffman,* 617 F.2d 474, 476 (7th Cir.1980). Therefore, this Court holds that Defendant Kolts as a special master appointed by Judge Ideman has absolute quasi-judicial immunity for his discretionary judicial acts.

■ Once an officer of the court has been found to be within the class protected by absolute quasi-judicial immunity, that officer "will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the *'clear absence of all jurisdiction.'* " *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331, 339 (1978) (emphasis added). Moreover, the "scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Id.,* 435 U.S. at 356, 98 S.Ct. at 1104–05. However, judicial officers will not be protected by absolute immunity "for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Mireles v. Waco,* — U.S. —, —, 112 S.Ct. 286, 288, 116 L.Ed.2d 9 (1991). The Supreme Court has emphasized that courts are to examine the " 'nature' and 'function' of the act, not the 'act itself.' " *Id.* (quoting *Stump,* 435 U.S. at 362, 98 S.Ct. at 1107). In determining whether an act is judicial in nature, courts must ask whether the act is a "function normally performed by a judge, [and] whether [the party] dealt with the judge in his judicial capacity." *Stump,* 435 U.S. at 362, 98 S.Ct. at 1107.

### a. *Whether The "Act" to Be Applied to the Immunity Test is the Extrajudicial Contact or the Adjudication of Claims.*

■ This Court must decide whether the Supreme Court's test for absolute immunity should be applied to Defendant Kolts' alleged extrajudicial communications, or the issuance of rulings and adjudication of Plaintiff's claims in an allegedly biased manner. In other words, because Plaintiff's only remaining claim is for violation of its due process rights to an unbiased tribunal, would Plaintiff's due process rights be violated when Defendant Kolts issued rulings and adjudicated Plaintiff's claims in an allegedly biased manner and with the appearance of impropriety, or would due process be violated by the alleged extrajudicial contacts themselves? The distinction is critical to the outcome of the immunity test.

The Ninth Circuit has tangentially addressed the issue of which "act" to use in applying the immunity test. In *Ashelman v. Pope,* 793 F.2d 1072 (9th Cir.1986), the court

---

11. *Mullis,* 828 F.2d at 1390; *Lonneker Farms, Inc. v. Klobucher,* 804 F.2d 1096, 1097 (9th Cir. 1986).

12. *Ward v. San Diego County Dept. of Soc. Servs.,* 691 F.Supp. 238, 241 (S.D.Cal.1988).

13. *Ashbrook v. Hoffman,* 617 F.2d 474, 476–77 (7th Cir.1980).

14. *Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1, 2–3 (1st Cir.1976).

15. *Mosher v. Saalfeld,* 589 F.2d 438, 442 (9th Cir.1978) (per curiam), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2883, 61 L.Ed.2d 311 (1979).

held that an act of conspiracy by a judge, while clearly improper, did not pierce the judge's immunity because the judge's ultimate act of adjudicating claims was clearly a judicial act. The *Ashelman* court stated that "[a]s long as the judge's *ultimate acts* are judicial actions taken within the court's subject matter jurisdiction, immunity applies." *Id.* at 1078 (emphasis added). In issuing its ruling, the court specifically overturned previous Ninth Circuit opinions which had held that judicial acts of conspiracy or bribery, which were the motives behind issuing biased rulings, were not subject to immunity. *Id.* at 1078 (citing *Rankin v. Howard,* 633 F.2d 844 (9th Cir.1980); *Beard v. Udall,* 648 F.2d 1264 (9th Cir.1981)). Thus, the court made clear that judicial immunity "from civil liability should not be 'affected by the motives with which their judicial acts are performed' . . ., intent should play no role in the immunity analysis." *Id.* at 1078 (quoting *Cleavinger v. Saxner,* 474 U.S. 193, 200, 106 S.Ct. 496, 500, 88 L.Ed.2d 507, 513 (1985)).

Plaintiff spends an inordinate amount of time in its moving papers arguing that Defendant Kolts' extrajudicial contacts violated its due process rights. However, these contacts in and of themselves cannot violate Plaintiff's due process rights. Indeed, these contacts cannot and do not cause an injury to Plaintiff. Plaintiff's due process rights can only be violated if Defendant Kolts issues rulings or adjudicates Plaintiff's claims in a biased manner or with the appearance of impropriety. Thus, the ultimate act of adjudicating in a biased manner, not the act of talking to a reporter or government agents, causes the due process violation. The acts of talking with Mr. Behar and the government agents are simply evidence of motive and evidence to support a contention of bias or an appearance of impropriety during the adjudication of claims, but they are not the due process violation itself. Consequently, the contacts themselves do not create a cause of action. Only when these contacts are viewed in relation to Defendant Kolts' position as a special master can they give rise to a consti-

tutional claim for violation of due process rights.

Thus, Plaintiff's attempt to apply the Supreme Court's immunity test (i.e., whether the judge acted within his jurisdiction. and whether the act was of a type normally performed by a judicial officer) to the acts of speaking with Mr. Behar and the government agents is misplaced. Plaintiff has not and can not allege a claim for having extrajudicial contacts.[16] Plaintiff has only successfully stated a claim for violation of its due process rights. Thus, this Court will analyze the absolute immunity issue as it applies to Plaintiff's due process claim which is before this Court.

### b. *Whether Defendant Kolts Acted in the Clear Absence of All Jurisdiction.*

■ Assuming for purposes of a motion to dismiss that Defendant Kolts, in his capacity as special master, did in fact issue rulings in a biased manner or with the appearance of impropriety resulting from extrajudicial contacts, the ensuing violation of due process would not occur in the clear absence of jurisdiction. In his capacity as a special master presiding over Plaintiff's case, Defendant Kolts clearly is acting within his "jurisdiction" in that he was appointed to serve as the special master in the *Scott–Wollersheim* cases by order of Judge Ideman. Thus, the propriety of Defendant Kolts' jurisdiction to adjudicate the claims before him is unquestionable.

Whether Defendant Kolts was biased when adjudicating Plaintiff's case or whether his actions gave the appearance of impropriety in the execution of his duties as special master is not the deciding factor. The issue is whether Defendant Kolts had jurisdiction over the action of adjudicating claims in which Plaintiff's due process rights may or may not have been violated. Clearly he did. Therefore, Defendant Kolts did not act in the clear absence of jurisdiction.

---

**16.** Indeed, this Court has already noted Plaintiff's inability to state a claim for violation of the

Judicial Code.

### c. Whether the Defendant's Alleged Acts Were of the Type Normally Performed by A Judge.

The Supreme Court has stated that the test for determining whether an act by a judge is "judicial" in nature is to determine whether "it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 1107, 55 L.Ed.2d 331 (1978).

Clearly the acts of making rulings, holding hearings, and adjudicating claims are acts well within the purview of a special master. Indeed, the execution of these acts is the very purpose for the creation of a special master. Moreover, Plaintiff's alleged due process violation arises from the Plaintiff's dealings with Defendant Kolts in his position as a special master. In other words, it is only because of Defendant Kolts' actions in his judicial capacity in relation to Plaintiff that due process rights are at stake.

Even if Defendant Kolts was biased in the adjudication of claims or issued rulings with the appearance of impropriety, such error is not sufficient to remove Defendant Kolts' actions from functions normally performed by a special master. The Supreme Court has made clear that a judicial officer's rulings or actions "will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority...." *Stump*, 435 U.S. at 356–57, 98 S.Ct. at 1104–05. In fact, the Supreme Court has upheld absolute immunity in cases involving some of the most egregious violations of constitutional rights. *See e.g., Mireles v. Waco*, —— U.S. ——, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (holding a judge absolutely immune after ordering police officers to "forcibly and with excessive force seize and bring [an attorney] into his courtroom" for morning session); *Stump*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (holding a judge absolutely immune after he ordered a fifteen-year-old girl sterilized at the request of her mother).

Thus, Defendant Kolts' execution of discretionary duties such as issuing rulings or adjudicating claims, whether executed in a biased manner or with an appearance of impropriety, are clearly judicial acts normally performed by a judge.

### d. Whether Policy Supports A Finding of Absolute Immunity.

The public policy underlying the doctrine of absolute immunity requires a finding that Defendant Kolts is immune from liability resulting from the execution of his duties even if in violation of Plaintiff's due process rights. Despite the unfairness to litigants that sometimes may result, the doctrine of judicial immunity is in the best interests of "the proper administration of justice for it allows a judicial officer ... to be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump*, 435 U.S. at 363, 98 S.Ct. at 1108. Thus, judicial immunity protects "judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants." *Forrester v. White*, 484 U.S. 219, 225, 108 S.Ct. 538, 543, 98 L.Ed.2d 555, 564 (1988). Moreover, absolute immunity

> 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' [citations omitted] ... His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation.

*Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288, 294 (1967) (quoting *Scott v. Stansfield*, L.R. 3 Ex. 220, 223 (1868), quoting *Bradley v. Fisher*, 13 Wall. 335, 350, 20 L.Ed. 646 (1872)).

Enabling litigants to sue judges by alleging, for whatever reason, that the judge was biased against them would clearly have a detrimental effect on the administration of justice. Harassment by unfounded litigation would cause deflection of a judge's energies from his public duties. In addition, it could

shade his decisions instead of allowing him to exercise independence of judgment required by his public trust. Here, Defendant Kolts is still the special master over Plaintiff's case, yet he is being sued by one of the very parties toward whom he is supposed to remain unbiased. If litigants were permitted to sue judges for issuing rulings that appear biased, independent judicial decision-making would certainly be in jeopardy. Whether Plaintiff should have an opportunity to redress a wrong is not at issue. The broader public interest would be at stake if this suit was permitted to go forward because it would prevent vigorous and fearless performance of a judicial officer's duties that are essential to the proper functioning of the judicial system.

For the forgoing reasons, this Court finds Defendant Kolts to be absolutely immune from Plaintiff's THIRD claim for violation of its due process rights.

### III. CONCLUSION

The Court finds that Plaintiff's claim for violation of its due process rights confers on this Court subject matter jurisdiction to hear this case. In addition, sovereign immunity does not bar this suit against Defendant Kolts. Plaintiff cannot, however, state a claim for violation of the Code of Conduct for United States Judges. While Plaintiff alleges sufficient facts to state a claim for violation of its due process rights, this Court exercises its discretion to deny Plaintiff's request for a declaratory judgment. In addition, the Court finds that this suit is simply a collateral attack on Judge Ideman's ruling denying Plaintiff's motion to recuse Defendant Kolts. Finally, the Court holds that Defendant Kolts has absolute immunity against Plaintiff's due process claim.

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss for lack of subject matter jurisdiction and **GRANTS WITH PREJUDICE** Defendant's motion to dismiss for failure to state a claim.

**IT IS SO ORDERED.**